TASTERS LTD., INC., Petitioner,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.

No. 900451–CA.

Court of Appeals of Utah.

Oct. 17, 1991.

Gary E. Doctorman (argued), Richard M. Marsh, Parsons, Behle & Latimer, Salt Lake City, for petitioner.

K. Allan Zabel, Emma R. Thomas (argued), Special Asst. Attys. Gen., Dept. of Employment Security, Salt Lake City, for respondent.

Before GARFF, GREENWOOD and JACKSON, JJ.

## AMENDED OPINION [1]

JACKSON, Judge:

Petitioner, Tasters Limited, Inc., seeks review of a final decision of the Board of Review of the Industrial Commission finding that product demonstrators are employees for purposes of the Utah Employment Security Act. We reverse and remand.

### FACTS

Tasters is in the business of providing workers to demonstrate various products in grocery and department stores. Tasters maintains a list of approximately 2000 individuals who are demonstrators. Demonstrators are contacted by Tasters regarding the availability of demonstrations. Demonstrators may accept or reject any given demonstration. Once a demonstrator accepts a particular assignment, he or she is responsible for that demonstration and must complete the assignment or obtain a replacement. Tasters provides no formalized training but provides each demonstrator with a two-page instruction sheet outlining how the demonstrations are to be carried out. The instructions address how the demonstration should be conducted, what breaks the demonstrator may take, how the product should be displayed, and what attire should be worn. While orientation and other training sessions are occasionally held, attendance is not required.

Demonstrators are paid by the job, and provide their own equipment. On several

---

1. This opinion replaces the opinion of the same name issued June 19, 1991.

occasions, however, Tasters has provided demonstrators with microwave ovens. Demonstrators are reimbursed for incidental expenses such as toothpicks or paper products used in conjunction with a demonstration. Demonstrators must fill out a one-page report upon completion of a demonstration, indicating what product was demonstrated, how much of the product was sold during the demonstration, and any expenses incurred. In addition, demonstrators may include the responses of customers, and add their own comments on the report form. Store managers may provide feedback to Tasters on the report form.

In 1989, Tasters sought a ruling from the Utah Department of Employment Security to determine whether demonstrators were to be considered employees or independent contractors of Tasters, based on recent changes in Utah Code Ann. § 35–4–22(j)(5) (Supp.1989).[2] The Department found that under the Utah Employment Security Act (the Act), demonstrators were employees of Tasters, and not independent contractors. Tasters appealed to an Industrial Commission Administrative Law Judge (ALJ), who affirmed the Department's ruling. Tasters then appealed to the Board of Review, which affirmed the ALJ's decision. This petition followed.

In its decision, the Board categorized the twenty factors set forth in section 35–4–22(j)(5) into four general categories. The Board then identified which of the factors were relevant to the present case, and determined whether the evidence with respect to those factors established "the freedom and control necessary to support a finding of independent contractor status."

Tasters argues four issues before this court: (1) that the Board improperly interpreted the statute by categorizing the twenty factors into four broad groupings,

and by giving more weight to some factors and less weight to others; (2) that the Board failed to analyze all of the factors set forth in the statute; (3) that the Board failed to make certain findings of fact when the uncontroverted evidence supports those findings; and (4) that the Board incorrectly determined demonstrators to be employees and not independent contractors. In addition, Tasters urges this court to review the record and make our own findings of fact based on Tasters's version of the evidence.

## STANDARD OF REVIEW

The Board's application of section 35–4–22(j)(5) to its factual findings involves a mixed question of law and fact. *McGuire v. Department of Employment Sec.,* 768 P.2d 985, 987 (Utah App.1989) (citations omitted). In reviewing an agency's determination of mixed questions of fact and law, we have stated that "we will not disturb the Board's application of its factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality." *Pro–Benefit Staffing v. Board of Review,* 775 P.2d 439, 442 (Utah App.1989). Although the Utah Supreme Court has also followed this approach in numerous cases,[3] that court recently conducted an in-depth analysis of the standard of review required under Utah Code Ann. § 63–46b–16(4) (1989) of the Utah Administrative Procedures Act (UAPA), and concluded that the *Pro–Benefit Staffing* approach was inconsistent with the analysis that should be applied. *Morton Int'l v. Auditing Div. of the Utah State Tax Comm'n,* 814 P.2d 581, 586–88 (Utah 1991).

In *Morton Int'l,* the Utah Supreme Court stated that

it is not the characterization of an issue as a mixed question of fact and law or

---

**2.** The 1991 amendment, effective April 29, 1991, rearranged and redesignated the definitions previously found in section 35–4–22(j)(5). *See* Amendment Notes, Utah Code Ann. § 35–4–22 (Supp.1991). The definitions relevant to this case are now found in Utah Code Ann. § 35–4–22.3(3) (Supp.1991). In this opinion we refer to the subsections in effect at the time the facts in

the case arose, which appear in Utah Code Ann. § 35–4–22(j)(5) (Supp.1989).

**3.** *See, e.g., Hurley v. Board of Review,* 767 P.2d 524, 527 (Utah 1988); *Bennett v. Industrial Comm'n,* 726 P.2d 427, 429 (Utah 1986); *Big K Corp. v. Public Serv. Comm'n,* 689 P.2d 1349, 1353 (Utah 1984).

the characterization of the issue as a question of general law that is dispositive of the determination of the appropriate level of judicial review. Rather, what has developed as the dispositive factor is whether the agency, by virtue of its experience or expertise, is in a better position than the courts to give effect to the regulatory objective to be achieved.

*Id.* (citations omitted). The court concluded that "absent a grant of discretion, a correction-of-error standard is used in reviewing an agency's interpretation or application of a statutory term." *Id.* at 588. *See also Mor–Flo Indus. v. Board of Review,* 817 P.2d 328, 330 (Utah App.1991). The *Morton* court however, qualified this conclusion by indicating that this analysis will not significantly affect review of agencies' interpretations and applications of their own statutes because "where we would summarily grant an agency deference on the basis of its expertise, *it is also appropriate to grant the agency defer-*

*ence on the basis of an explicit or implicit grant of discretion contained in the governing statute." Morton Int'l,* 814 P.2d at 588 (emphasis added). Therefore, to determine the appropriate standard of review in this case, we must decide if section 35–4–22(j)(5) grants discretion to the Board to give effect to the statute.

■ In utilizing statutory language such as "as determined by the commission," the legislature has explicitly granted discretion to some agencies. *See id.* & n. 41. Grants of discretion may also be implied from statutory language such as "equity and good conscience." *Id.* & n. 41. Similarly, in the statute at issue here, the legislature's use of the language "unless it is shown to the satisfaction of the commission," Utah Code Ann. § 35–4–22(j)(5) (Supp.1989), "if the [commission determines that the] weight of the evidence supports that finding," *id.,* and "considered [by the commission] if applicable," *id.,* indicates an explicit grant of discretion to the Board.[4]

---

4. Section 35–4–22(j)(5) provides:

(5) Services performed by an individual for wages or under any contract of hire, written or oral, express or implied, are considered to be employment subject to this chapter, unless it is shown to the satisfaction of the commission that the individual is an independent contractor. The commission shall analyze all of the facts in Subsections (A) through (T) under the common-law rules applicable to the employer-employee relationship to determine if an individual is an independent contractor. An individual is an independent contractor if the weight of the evidence supports that finding. The following factors are to be considered if applicable:

(A) whether the individual works his or her own schedule or is required to comply with another person's instructions about when, where, and how work is to be performed;

(B) whether the individual uses his or her own methods and requires no specific training from the purchaser, or is trained by an experienced employee working with him or her, is required to take correspondence or other courses, attend meetings, and by other methods indicates that the employer wants the services performed;

(C) whether the individual's services are independent of the success or continuation of a business or are merged into the business where success and continuation of the business depends upon those services and the employer coordinates work with the work of others;

(D) whether the individual's services may be assigned to others or must be rendered personally;

(E) whether the individual has the right to hire, supervise, and pay other assistants pursuant to a contract under which the individual is responsible only for the attainment of a result or the individual hires, supervises, and pays workers at the direction of the employer;

(F) whether the individual was hired to do one job and has no continuous business relationship with the person for whom the services are performed or continues to work for the same person year after year;

(G) whether the individual establishes his or her own time schedule or does the employer set the time schedule;

(H) whether the individual is free to work when and for whom he or she chooses, or is required to devote full-time to the business of the employer, and is restricted from doing other gainful work;

(I) whether the individual uses his or her own office, desk, telephone, or other equipment or is physically within the employer's direction and supervision;

(J) whether the individual is free to perform services at his or her own pace or performs services in the order or sequence set by the employer;

(K) whether the individual submits no reports or is required to submit regular oral or written reports to the employer;

(L) whether the individual is paid by the job or on a straight commission or is paid by the

■ The Board is given latitude under the statutory language to weigh and analyze the applicability of each of the twenty factors to individual facts. The language in the statute bespeaks a legislative intent to delegate interpretation of that statute to the agency. *Morton Int'l,* 814 P.2d at 588–89. Given that the legislature granted discretion to the agency in interpreting section 35–4–22(j)(5), it is in a better position than the court to give effect to the legislative intent, and therefore, we will not disturb the Board's decision unless it is unreasonable.[5]

■ As to Tasters' challenge to the Board's factual findings, agency decisions regarding basic facts have historically been considered conclusive if they were supported by the evidence. *See McGuire,* 768 P.2d at 987 (citation omitted). This test allowed appellate courts to review only that part of the record which supported the Board's findings. *See Grace Drilling v. Board of Review,* 776 P.2d 63, 68 n. 7 (Utah App.1989). Proceedings which were commenced after January 1, 1988, are governed by Utah Code Ann. § 63–46b–16(4) (1989) of UAPA, and "[w]e now review both sides of the record to determine whether the Board's findings are supported by substantial evidence." *Id.* "In undertaking such a review, this court will not substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review." *Id.* at 68 (citations omitted).

## ANALYSIS

### A. Application of the Statute

Tasters first argues that the Board improperly interpreted the statute by utilizing an arbitrary categorization, and by giving more weight to some factors and less weight to others.

The statutory test at issue in this case is set forth in Utah Code Ann. § 35–4–22(j)(5) (Supp.1989). Prior to April 24, 1989, the statute utilized a two-part ("A–B") test to determine whether an individual was an independent contractor or an employee for purposes of the Act. That test required that the individual performing the services be "free from control or direction over the performance of those services" and be "customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the contract of service." Utah Code Ann. § 35–4–22(j)(5) (1988).

The A–B test was replaced in April 1989 with a test that relied upon twenty factors which the Internal Revenue Service had identified as significant in determining in-

employer in regular amounts at stated intervals;
(M) whether the individual accounts for his or her own expenses or is paid by the employer for expenses;
(N) whether the individual furnishes his or her own tools or is furnished tools and materials by the employer;
(O) whether the individual has a real, essential, and adequate investment in the business or has a lack of investment and depends on the employer for such facilities;
(P) whether the individual may realize a profit or suffer a loss as a result of services performed or cannot realize a profit or loss by making good or poor decisions;
(Q) whether the individual works for a number of persons or firms at the same time or usually works for only one employer;
(R) whether the individual has his or her own office and assistants, holds a business license, is listed in business directories, maintains a business telephone, or advertises in newspapers or does not make services available ex-

cept through a business in which he or she has no interest;
(S) whether the individual may not be fired or discharged as long as he or she produces a result which meets contract specifications or may be discharged at any time; and
(T) whether the individual agrees to complete a specific service, and is responsible for its satisfaction or is legally obligated to perform the service, or may terminate his or her relationship with the employer at any time.

5. *See also Salt Lake City Corp. v. Confer,* 674 P.2d 632, 636 (Utah 1983) (Where wording of legislation does not give any basis for preferring one interpretation over another, "we deem it preferable to defer to the interpretation adopted by the administrative body to which the Legislature committed the administration of this Act."). In *Morton Int'l,* the supreme court cited *Salt Lake City Corp.* with approval, stating that "[t]he approach used in *Salt Lake City Corp.* is consistent with [UAPA]." *Morton Int'l,* 814 P.2d at 588.

dependent contractor status.[6] In reviewing the evidence, the Board grouped the twenty factors into four categories: factors A, B, G, J, and K were found to relate to the amount of control Tasters exercised over demonstrators in the performance of their duties (hereinafter Category One); factors C, F, H, O, P, Q, and R were found to relate to the degree of independence and separation existing between demonstrators and Tasters (Category Two); factors D, E, L, S, and T were found to relate to the relationship between Tasters and the demonstrators (Category Three); and factors I, M, and N were found to relate to the investment and allocation of expenses between the parties (Category Four). Tasters challenges this categorization, arguing that because the statute does not expressly provide for such categorization, the Board had no authority to do so.

■ "On only one point as to the relative weight of the various tests is there an accepted rule of law: It is constantly said that the right to control the details of the work is the primary test." 1C A. Larson, *The Law of Workmen's Compensation*, § 43.30 at 8–10 (1990) [hereinafter Larson]. The Restatement (Second) of Agency § 220 (1958) spells out a typical definition and summary of such tests, listing ten factors to be considered as part of the analysis. These ten factors, focusing on "right to control" and "nature of work," are reflected in the twenty factors listed in the statute at issue here.

Emphasizing "right to control" has historically been an integral element of Subsection (j)(5). In 1920, our supreme court, for the first time, defined an independent contractor as one who is under contract to render service or do work for another according to his own method, means, and manner of doing the work and without being subject to the control, direction, or supervision of such other, except as to the result of the work or service. *Stricker v. Industrial Comm'n*, 55 Utah 603, 188 P. 849, 850–51 (1920) (for purposes of the Workers's Compensation Act). In 1936, the Utah Legislature passed the Unemployment Compensation Act which read in pertinent part:

Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that—

(a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(b) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which service is performed; and

(c) such individual is customarily engaged in an independently established trade, occupation, profession or business.

Unemployment Compensation Act, § 19(j)(5) (Chapter 1, Laws of Utah 1936, Special Session, as amended by Chapter 43, Laws of Utah 1937) (*quoted in Creameries of America v. Industrial Comm'n*, 98 Utah 571, 102 P.2d 300, 301–02 (1940)).

In 1986, Subsection (j)(5)(B) was deleted and former Subsection (j)(5)(C) was redesignated as Subsection (j)(5)(B), and in 1989, Subsections (A) and (B) were rewritten, and Subsections (C) through (T) were added as described *supra*. In amending the statute in 1989, the legislature did not change the

---

6. The current version of Subsection (j)(5) of the statute at issue maintains the prior statute's presumption in favor of finding employment status: "Services performed by an individual for wages or under any contract of hire, written or oral, express or implied, are considered to be employment subject to this chapter unless it is shown to the satisfaction of the commission that the individual is an independent contractor." Utah Code Ann. § 35–4–22(j)(5) (Supp.1989). The presumption may be rebutted if "it is shown

to the satisfaction of the commission that the individual is an independent contractor." *Id. See also Superior Cablevision Installers v. Industrial Comm'n*, 688 P.2d 444, 447 (Utah 1984) (The Act "should be liberally construed in favor of affording benefits."); *Singer Sewing Mach. Co. v. Industrial Comm'n*, 104 Utah 175, 134 P.2d 479, 485 (1943) (Subdivision (j)(5) is an exception or exclusion section excluding certain persons from receiving benefits.).

test's emphasis on "control and direction," or on "independent establishment in business."[7]

The four categories designated by the Board—amount of control, degree of independence and separation, the status of the relationship, and amount of investment—reflect the test the legislature has traditionally dictated in determining whether an individual is an independent contractor or an employee. The focus on control and independence is the same focus which other jurisdictions apply in examining this issue. *See* Larson at § 43, and cases cited therein. The inclusion of a category which has as its focus "status of the relationship" indicates that the common-law definition of employee is also meant to be examined, although not controlling. *See generally id.* "Amount of investment" dictates a more narrow examination into factors such as equipment requirements and who supplies them, but still addresses the more general question of control and independence.

■ "While the Commission's interpretation of this word is not the only reasonable interpretation that could have been adopted, it is well within the limits of reasonableness that confine judicial review of administrative decisions of this nature." *Salt Lake City Corp. v. Confer,* 674 P.2d 632, 636 (Utah 1983) (citing *Utah Dep't of Admin. Serv. v. Public Serv. Comm'n,* 658 P.2d 601, 609–12 (Utah 1983)). *See also Morton Int'l v. Utah State Tax Comm'n,* 814 P.2d 581, 586–89 (Utah 1991). We conclude that the Board's interpretation of Utah Code Ann. § 35–4–22(j)(5), grouping the factors into four categories, was not unreasonable.

**B. Failure to Make Requisite Findings**

Tasters next argues that the Board summarily disregarded many of the twenty factors enumerated in Subsection (j)(5), and failed to consider the facts underlying those factors. Tasters contends that the language "shall analyze all of the facts" requires the Board to study each and every fact underlying each of the twenty factors, and then determine if the factor relevant to those facts is to be considered.[8]

The Board stated at the outset of its decision that section 35–4–22(j)(5) "recognizes that not each of its 20 factors (A through T) will apply in every situation." The Board then determined that most of the factors in Category Two, except "R," and all of the factors in Category Four were not significant in the present case. For some of the factors that were considered by the Board to be relevant, such as the factors comprising Category One, evidence relating to the factors was outlined. For other relevant factors, e.g., Category Three, the Board simply stated that those factors were significant to the case. For Category Four, the Board simply stated that "[t]hese factors are not useful under the circumstances of this case since equipment reimbursements are minimal and expenses are reimbursed by Tasters'[s] clients." No findings were made as to why some of the factors were insignificant, while others were considered significant. This analysis was in error.

■ We agree with Tasters that the Board cannot dismiss as inapplicable one or more of the factors listed in the statute absent some discussion as to their inapplicability. Subsidiary findings must be made in sufficient detail on all necessary issues

---

**7.** In amending the statute, the Utah Legislature expressed no desire to change the emphasis or focus of the old test, but merely attempted to clarify its application: "[the old version of the statute] created somewhat of a hardship especially on small businesses in that there were those outside the business area that didn't understand the difference between an independent contractor and a [sic] employee." Senate Proceeding on Senate Bill No. 164.

**8.** To determine if an individual is an independent contractor,

[t]he commission shall analyze all of the facts in Subsections (A) through (T) under the common-law rules applicable to the employer-employee relationship to determine if an individual is an independent contractor. An individual is an independent contractor if the weight of the evidence supports that finding. The following factors are to be considered if applicable....

Utah Code Ann. § 35–4–22(j)(5) (Supp.1989).

so that we may determine if "there is a logical and legal basis for the ultimate conclusions." *Milne Truck Lines v. Public Service Comm'n,* 720 P.2d 1373, 1378 (Utah 1986). "The importance of complete, accurate, and consistent findings of fact is essential to a proper determination by an administrative agency." *Id.* Without such findings, we cannot review the Board's ultimate conclusion that Tasters's demonstrators were employees. Therefore, it is necessary to remand to make additional findings of fact that resolve the issues which are relevant to its decision.

### C. Challenge to Factual Findings

The Board also concluded that Tasters's demonstrators were employees, and not independent contractors under the Act, after reviewing the record, and making its own findings of fact. Tasters challenges this determination. Because we reverse the Board's determination and remand for entry of appropriate findings of fact, we do not reach this issue.

## CONCLUSION

The case is remanded to the Department of Employment Security to make additional findings of fact which are relevant to the determination of employee or independent contractor status.

GARFF and GREENWOOD, JJ., concur.