**Sharon Kay REDDISH, Plaintiff,**

v.

**SENTINEL CONSUMER PRODUCTS; Workers Compensation Fund of Utah, and Second Injury Fund, Defendants.**

No. 880272–CA.

Court of Appeals of Utah.

April 6, 1989.

John T. Caine, Ogden, for plaintiff.

James Black and Wendy Moseley, Salt Lake City, for defendants.

Before DAVIDSON, NEWEY[1] and ORME, JJ.

---

1. Robert L. Newey, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. section 78–3–24(1)(j) (1987).

OPINION

ROBERT L. NEWEY, Senior Judge:

Applicant Sharon Kay Reddish obtained a writ of review appealing to this Court an order of the Industrial Commission denying her certain worker's compensation benefits. We affirm.

Reddish, a production line worker employed by Sentinel Consumer Products ("Sentinel"), caught her foot while walking on a catwalk or scaffold situated about five and a half feet above the floor. Reddish fell over the side but did not strike the floor because her foot remained fixed in the catwalk while her head and back were draped over the side. After a few moments, Reddish was able to pull herself back up onto the catwalk. She was thereafter treated by several physicians.

Reddish applied for both temporary and permanent disability benefits. Permanent disability benefits were denied, and Reddish does not seek judicial review of that denial. Temporary benefits were awarded for the period of November 4, 1986 through December 16, 1986, and thereafter discontinued, although medical expenses incurred thereafter were paid. Reddish contested before the Commission, and appeals here, the denial of temporary disability benefits for the time subsequent to December 16, 1986.

Following a hearing and testimony from Reddish, the Administrative Law Judge ("A.L.J.") obtained a medical report from Dr. Nathaniel Nord, M.D. The substance of Dr. Nord's report and of the A.L.J.'s findings is that:

1. Reddish's condition had stabilized sufficiently to determine her permanent condition.

2. She was not temporarily or permanently disabled from her injury after December 16, 1986.

3. Her medical expenses prior to Nord's evaluation were necessitated by her accident.

Reddish contrasts the second finding above with a statement by her own Dr. Michael Janeway in his report of May 29, 1987 to the Industrial Commission, indicating that he advised that Reddish not return to work as of that date. Reddish complains that the administrative decision leaves her both without benefits and without a means of earning a living for the period following December 16, 1986, if she follows her personal physician's advice. The principal question [2] presented in this case, therefore, is whether temporary disability benefits were properly terminated, particularly in view of the fact that Reddish's attending physician continued to advise her not to return to work.

The critical point for termination of temporary disability benefits is "medical stabilization," defined as the time when "the period of healing has ended and the condition of the claimant will not materially improve." *Booms v. Rapp Const. Co.*, 720 P.2d 1363, 1366 (Utah 1986). The concept of medical stabilization is further construed as being independent of the ability of the claimant to return to work; the Supreme Court has stated that "identifying when the healing period has ended does not require a finding of ability to work[.]" *Id.* at 1367.

This Court similarly held in *Rekward v. Industrial Commission*, 755 P.2d 166, 168–69 (Utah App.1988), that temporary disability benefits are properly discontinued as soon as the point of medical stabilization is reached, regardless of whether the claimant is actually able to return to work. In other words, Utah Code Ann. sections 35–1–65 through 35–1–67 (1988) establish only four categories of disability

---

2. In addition, Reddish also sees an inconsistency in the fact that temporary disability benefits were discontinued for a time during which medical benefits were nevertheless paid. However, the notion of medical stabilization does not really present such a conflict; the applicant's medical condition may have stabilized and the initial effects of the injury have healed, but without fully alleviating the need for compensable subsequent medical treatment. *Kennecott Copper Corp. v. Industrial Comm'n*, 597 P.2d 875 (Utah 1979); *Kennecott Copper Corp. v. Anderson*, 30 Utah 2d 102, 514 P.2d 217 (1973).

benefits: Temporary total, temporary partial, permanent total, and permanent partial. In *Rekward,* the court declined to judicially legislate a fifth for "rehabilitative disability." *Id.* at 169. There appears no substantial basis in this case for distinguishing the *Booms* and *Rekward* precedents, even though the result may be a gap in workers' compensation coverage between medical stabilization and the time when the applicant is able to return to work, and even though rehabilitation may have to be accomplished during that period.

The existence of such a gap seems fundamentally in conflict with the basic purpose of temporary disability benefits, which is to provide an income for the injured party until he is able to return to work or to receive permanent disability benefits.[3] We are also aware that Reddish's plight is perhaps even more serious than that of the claimants in *Booms* and *Rekward,* since she received no permanent disability benefits, whereas the *Booms* and *Rekward* claimants were both determined to have a permanent disability, for which benefits were allowed for the time following medical stabilization. However, although the result may create a hardship, the governing rule is clear and not within our power to overrule.[4]

The order of the Industrial Commission is therefore affirmed.

DAVIDSON and ORME, JJ., concur.

---

3. *See Intermountain Health Care, Inc. v. Ortega,* 562 P.2d 617, 619–20 (Utah 1977); *cf. State ex rel. Horne v. Great Lakes Const. Co.,* 18 Ohio 3d 79, 480 N.E.2d 753 (1985).

4. We would, however, call the attention of the Industrial Commission to the fact that its forms may needlessly exacerbate the problems resulting from the distinction between "medical stabilization" and the claimant's ability to return to work. As apparent from this case, the Industrial Commission's report forms ask the attending physician to determine, not medical stabilization, but rather the ability of the claimant to work. Treating physicians may be wholly unaware of the doctrine of "medical stabilization," the effect of medical stabilization on temporary disability benefits, and the lack of legal consequence of the physician's opinion on the claimant's ability to work. The forms also do not appear to inform the attending physician of the effect of his report. There could be an erroneous assumption that the physician's opinion is decisive when, in reality, it is only a part of the totality of the evidence in the case. The physician may well wish to take into account the effect of his opinion when advising the injured party concerning work. It would therefore appear that the Industrial Commission should conform its reporting forms more precisely to the concept of medical stabilization.