Mark KING, Petitioner,

v.

The INDUSTRIAL COMMISSION OF UTAH; Workers Compensation Fund; and Superior Roofing Company, Respondents.

No. 920464–CA.

Court of Appeals of Utah.

March 18, 1993.

Utah denying him temporary total disability compensation for the period of his incarceration at the Utah State Prison and for the period after his release until corrective surgery was performed. We reverse and remand for the calculation and payment of benefits.

## FACTS

King suffered an on-the-job injury to his wrist on November 20, 1989, while working for Superior Roofing Company. King received temporary total disability benefits from the Utah Workers' Compensation Fund from November 21, 1989 through May 22, 1990. The Fund also paid medical expenses.

King was scheduled for surgery to correct his wrist injury on May 30, 1990. However, on May 22, 1990, King was incarcerated at the Utah State Prison for a parole violation. Because of his incarceration, surgery was postponed. Temporary total disability compensation was terminated during the period of King's incarceration and for the period after his release until corrective surgery was performed. King was released from prison on October 13, 1990. King was admitted for surgery on January 29, 1991 and surgery was performed on January 30, 1991. Temporary total disability compensation resumed on January 29, 1991 and continued through July 14, 1991, covering the period of King's surgery and recovery.

On July 9, 1991 an Administrative Law Judge (ALJ) denied King's claim for temporary total disability benefits during the period from May 22, 1990 through January 28, 1991. The ALJ further ordered that the Workers' Compensation Fund was entitled to a credit for all temporary total compensation paid to King after May 22, 1990 and before January 29, 1991. The ALJ determined King's "loss of wages for the claimed period was not related to the industrial accident whatsoever, but, rather, was solely due to the actions or conduct of the applicant which resulted in his being

Robert Breeze (argued), Salt Lake City, for petitioner.

Richard G. Sumsion (argued), Salt Lake City, for respondents.

Before BILLINGS and GREENWOOD, JJ., and RUSSON, Associate P.J.

## OPINION

BILLINGS, Presiding Judge:

Petitioner Mark King seeks reversal of an Order of the Industrial Commission of

incarcerated." The Industrial Commission affirmed the order of the ALJ. This appeal followed.

## STANDARD OF REVIEW

On appeal, King seeks temporary total disability compensation for the period between May 22, 1990 and January 28, 1991, the period of his incarceration and the period after his release until corrective surgery was performed. King contends the Industrial Commission erroneously interpreted and applied the workers' compensation statutes in denying him compensation.

Because the proceedings in this case began after January 1, 1988, we review them under the Utah Administrative Procedures Act (UAPA). *See* Utah Code Ann. §§ 63–46b–0.5 to –22 (1989 & Supp.1992). Judicial review of agency action under UAPA is controlled by Utah Code Ann. § 63–46b–16 (1989). Section 4 of that statute enumerates the situations under which a court can grant relief.[1] Because the controlling precedent from the Utah Supreme Court is less than clear[2] and because of divergence in recent opinions of this court over how we discern the appropriate standard of review under UAPA, we take the opportunity

today to discuss the issue in depth. *Compare Putvin v. Tax Comm'n*, 837 P.2d 589 (Utah App.1992)[3] (finding grant of discretion in broad statutory language without identifying whether it was explicit or implicit) *with Chevron U.S.A., Inc. v. Tax Comm'n*, 847 P.2d 418, 420, n. 6, (Utah App.1993)[4] (finding no explicit grant of discretion because no statutory directive to interpret a term). We feel compelled to take this approach due to the admonitions this court recently received from the supreme court in *State v. Thurman*, 846 P.2d 1256 (Utah 1993). In that case, which resolved a conflict in this court regarding the standard of review applicable in certain criminal matters, the supreme court noted its

> uneasiness with the persistence of the division in the court of appeals on this [standard of review] issue. To the extent that this disagreement simply represents an evolution of two conflicting interpretations of the same legal doctrine by different panels of judges, its persistence is contrary to the doctrine of stare decisis....
>
> ... It is one thing to admit that differences among judges on a particular legal question can exist; it is quite another to

1. That section provides:
   (4) The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:
   (a) the agency action, or the statute or rule on which the agency action is based, is unconstitutional on its face or as applied;
   (b) the agency has acted beyond the jurisdiction conferred by any statute;
   (c) the agency has not decided all of the issues requiring resolution;
   (d) the agency has erroneously interpreted or applied the law;
   (e) the agency has engaged in an unlawful procedure or decision-making process, or has failed to follow prescribed procedure;
   (f) the persons taking the agency action were illegally constituted as a decision-making body or were subject to disqualification;
   (g) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court;

(h) the agency action is:
   (i) an abuse of the discretion delegated to the agency by statute;
   (ii) contrary to a rule of the agency;
   (iii) contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency; or
   (iv) otherwise arbitrary or capricious.
Utah Code Ann. § 63–46b–16 (1989).

2. *Cf. State v. Thurman*, 846 P.2d 1256, 1267–71 (Utah 1993) (acknowledging supreme court's failure to clearly articulate standards of review).

3. Opinion by Judge Billings with Judges Jackson and Russon concurring.

4. Opinion by Judge Bench with Judge Garff concurring and Judge Russon concurring in the result only.

sanction variability in the rule of law depending solely on which of several judges of an appellate court sit on a given case.

*Id.* at 1271. Thus, to eliminate any confusion as to the analytical model this court is following to determine the appropriate standard of review under UAPA, we engage in a rather laborious discussion of the standard of review.

### A. Issues of Fact

▮ Under UAPA, the standard we apply when reviewing factual findings is clear. The only subsection under which factual findings can be challenged is 63–46b–16(4)(g). Under that subsection, we will change a factual finding only if it "is not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1989). *Accord Zissi v. Tax Comm'n,* 842 P.2d 848, 852–54 (Utah 1992). " 'Substantial evidence is that which a reasonable person "might accept as adequate to support a conclusion." ' " *Stewart v. Board of Review,* 831 P.2d 134, 137 (Utah App.1992) (quoting *Merriam v. Board of Review,* 812 P.2d 447, 450 (Utah App.1991) (quoting *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 68 (Utah App.1989))). To reach our conclusion we examine the entire record available to the court, not simply that which supports the findings of the ALJ. *Id.* Thus, Petitioner necessarily has the burden of marshaling "all of the evidence supporting the findings and show[ing] that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." *Grace Drilling,* 776 P.2d at 68. *Accord Hales Sand & Gravel Inc. v. Tax Comm'n,* 842 P.2d 887, 890 (Utah 1992). This review is not as strict as a de novo review of the proceedings, nor as lenient as a review for "any competent evidence" to support the findings, it simply accords deference to the agency where two reasonable, yet conflicting, conclusions could have been reached. *See Grace Drilling,* 776 P.2d at 68 & n. 7.

▮ Additionally, the Utah Rules of Appellate Procedure govern how we review agency actions. *See* Utah Code Ann. § 63–46b–16(2)(b) (1989). Rule 11(e)(2) of the Utah Rules of Appellate Procedure provides: "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." Utah R.App.P. 11(e)(2). Rule 11 requires counsel provide the appellate court with *all evidence* pertinent to the issues on appeal. *See Sampson v. Richins,* 770 P.2d 998, 1102 (Utah App.), *cert. denied,* 776 P.2d 916 (Utah 1989). Thus, our procedural rules specifically require a petitioner to provide a transcript of the proceedings if he is going to challenge factual findings under subsection 63–46b–16(4)(g). A petitioner must also provide a transcript if he argues a legal conclusion is unsupported by the evidence in the case. Otherwise we have no basis on which to evaluate the findings and conclusions.

### B. Issues of General Law

The standard we apply when an agency interprets or applies general law such as case law, constitutional law, or non-agency specific legislative acts is also clear. Our review in this area is guided by section 63–46b–16(4)(d). As we did prior to UAPA, we review agency interpretations of general law "under a correction of error standard, giving no deference to the agency's decision." *Questar Pipeline Co. v. Tax Comm'n,* 817 P.2d 316, 318 (Utah 1991). *See also Zissi v. Tax Comm'n,* 842 P.2d 848, 852–54 (Utah 1992) (holding issues of law are reviewed for correctness under § 63–46b–16(4)(d)); *Savage Indus., Inc. v. Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991) (finding agency's erroneous interpretation of law is grounds for relief under § 63–46b–16(4)(d)). In *Morton International, Inc. v. Auditing Division,* 814 P.2d 581 (Utah 1991), the supreme court articulated the reason for the correction of error

standard is not simply because the court characterizes an issue as one of general law but because the agency has no special experience or expertise placing it in a better position than the courts to construe the law. *Id.* at 586.

## C. Issues of Agency–Specific Law

■ We are faced with a far more difficult task in deciding the amount of deference to grant an agency's interpretation or application of agency-specific statutory law. In that instance, we grant deference only "when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." *Id.* at 589.[5] If there is a grant of discretion we review the agency action under Utah Code Ann § 63–46b–16(4)(h)(i) (1989). *See Chicago Bridge & Iron Co. v. Tax Comm'n,* 839 P.2d 303 (Utah 1992). Where a grant exists, we will not disturb the agency's interpretation or application of the law unless its determination exceeds the bounds of reasonableness and rationality. *Morton,* 814 P.2d at 586–87, 589, 592;

*Cross v. Board of Review,* 824 P.2d 1202, 1204 (Utah App.1992). "[A]bsent a grant of discretion, a correction-of-error standard is used in reviewing an agency's interpretation or application of a statutory term." *Morton,* 814 P.2d at 588. *See also Mor-Flo Indus., Inc. v. Board of Review,* 817 P.2d 328, 330 (Utah App.1991), *cert. denied,* 843 P.2d 516 (Utah 1992). In other words, we review agency interpretation or application of agency-specific statutes where no grant of discretion exists under Utah Code Ann. § 63–46b–16(4)(d). *See Bennion v. Graham Resources, Inc.,* 849 P.2d 569, 570 (Utah 1993).

■ The difficulty arises in determining whether an agency has been granted discretion and thus whether our review is governed by section 63–46b–16(4)(h)(i). In *Morton* the supreme court reviewed the impact of UAPA on the standard of review an appellate court should utilize when an agency interprets or applies an agency-specific statute. *Morton* indicates that review under section 63–46b–16(4)(h)(i) represents a "break from prior law." *Morton,* 814 P.2d at 588.[6] It held "an agency's statuto-

5. Prior to UAPA we reviewed agency determinations under three distinct categories. While the standards for factual determinations and interpretations of general law remain the same, it is this intermediate area of scrutiny that has changed. Formerly

> agency decisions involving mixed questions of law and fact or the application of specific factual situations to the legislative enactments under which the agency operates were to be given deference by the courts and were to be upheld so long as they fell within the bounds of reasonableness and rationality.

*Savage Indus., Inc. v. Tax Comm'n.,* 811 P.2d 664, 667 (Utah 1991). We spent far less time grappling with the standard of review under this relatively simple analysis. The complexities involved in the new analysis seem not, in the end, to make a significant enough difference for the amount of energy we expend.

6. Appeals under the various subsections of 63–46b–16(4) are subject to various standards of review. For example, in *Union Pacific Railroad Co. v. Tax Commission,* 842 P.2d 876 (Utah 1992), the railroad challenged some determinations of the Tax Commission. One challenge was to a rule of the Commission under section 63–46b–16(4)(h)(ii). Citing a pre-UAPA case the

court held that rules promulgated by the agency and departures from those rules will be upheld if they are reasonable and rational. *Id.* at 878–80. The court engaged in no discussion of explicit or implicit grants of discretion. The court also held the railroad's challenge to the constitutionality of a sales tax under section 63–46b–16(4)(a) would be reviewed for correctness. *Id.* at 880–81.

Thus, *Morton* applies only when we are ascertaining whether an appeals is brought under section 63–46b–16(4)(h)(i) or 63–46b–16(4)(d). *See also Nucor Corp. v. Tax Comm'n,* 832 P.2d 1294 (Utah 1992) (noting review for abuse of agency discretion was under section 63–46b–16(4)(h)(i)); *Anderson v. Public Service Comm'n,* 839 P.2d 822 (Utah 1992) (noting review of claims that agency action was arbitrary and capricious under section 63–46b–16(4)(h)(iv) is for reasonableness). Because the *standard of review* under UAPA will vary based on the subsection the claim is brought under, we strongly encourage counsel to clearly identify under what section review is being sought and to make certain they identify the appropriate standard of review under that section. *Cf. Bhatia v. Department of Employment Sec.,* 834 P.2d 574, 581–82 (Utah App.1992) (Bench, P.J., concurring) (encouraging counsel to present an

ry construction should be given deference when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." *Id.* at 589. However, *Morton* does not detail what the term explicit grant of discretion means. In *Morton*, the example of an explicit grant of discretion to an agency relates to the Tax Commission deciding whether a piece of equipment qualifies for an exemption from the sales and use tax. *Id.* at 588 n. 40. The statute allows the exemption if the equipment is a "normal operating replacement ... *as determined by the commission.*" Utah Code Ann. § 59-12-104(15) (1992) (emphasis added). Thus, an explicit grant of discretion can be found when a statute specifically authorizes an agency to interpret or apply statutory language.

■■■ *Morton* also discusses when an implicit grant of discretion is present. We can find implicit grants of discretion in "broad and generalized" statutory language because such language indicates a legislative intent to delegate interpretative powers to the agency. *Morton*, 814 P.2d at 588. Articulated somewhat differently, if we find there are multiple permissible interpretations of statutory language we must defer to the agency's policy choice. *Id.* at 589. However, if we can derive the

legislative intent in the statute by "traditional methods of statutory construction, [there is no implicit grant of discretion and] the agency's interpretation will be granted no deference and the statute will be interpreted in accord with its legislative intent." *Id.* at 589.

■■■ In one of its more confusing sections, *Morton* tells us "to the extent that our cases can be read as granting deference to an agency's decisions based *solely* on the agency's expertise," they are inconsistent with UAPA's command that we defer *only* on the basis of a statutory grant of authority. *Morton*, 814 P.2d at 587 (emphasis added). The court then immediately responds to this statement by recognizing the changes it discusses in standard of review "may not have significant effect." *Id.* We take this to mean that consideration of an agency's expertise and experience is relevant in determining whether the agency should make the necessary policy choice and thus be granted deference by the reviewing court.[7] *Morton* specifically states it should not be read as holding the ways of finding grants of discretion which it discusses "are the only methods of determining whether the legislature has granted the agency discretion in dealing with an issue." *Morton*, 814 P.2d at 589.

*Morton*'s directive that we seek out grants of discretion before applying the

---

appropriate statutory construction in UAPA cases).

7. This conclusion that agency expertise and experience remain appropriate considerations when assessing whether to grant deference is supported by *Sanders Brine Shrimp v. Tax Commission*, 846 P.2d 1304 (Utah 1993) and *Board of Equalization v. Tax Commission*, 846 P.2d 1292 (Utah 1993). In both cases, the supreme court cites a pre-*Morton* non-UAPA case, *Chris & Dick's Lumber & Hardware v. Tax Commission*, 791 P.2d 511 (Utah 1990), for the proposition that "[w]e give no deference to an administrative agency's interpretation of a statute absent certain circumstances, none of which exist here." *Sanders*, at 1305; *Board of Equalization*, at 1295-96. The circumstances referenced in *Chris & Dick's* are those instances where the agency's expertise should be deferred to. *Chris & Dick's*, 791 P.2d at 513-14.

Further, a footnote in *Zissi v. Tax Commission*, 842 P.2d 848 (Utah 1992), a post-*Morton*

UAPA case, also supports this conclusion. In that footnote the supreme court rejects applying an intermediate standard of review based in part on the rationale that "the issues are questions of constitutional law and statutory construction on which the Commission's experience and expertise will be of no real assistance." *Id.* at 860 n. 2. The *Zissi* footnote relies on *Silver v. Tax Commission*, 820 P.2d 912 (Utah 1991), and *Sandy City v. Salt Lake County*, 827 P.2d 212 (Utah 1992), to support this proposition. *Silver* is a pre-UAPA case and *Sandy City* did not involve an agency of the state, thus, UAPA would not apply even if that case arose today.

*Sanders*, *Board of Equalization*, and *Zissi* all indicate agency experience and expertise are still relevant considerations in deciding whether there is a grant of discretion in cases arising under UAPA.

deferential standard of review under 63–46b–16(4)(h)(i) has led this court to expend significant judicial resources on ascertaining the appropriate standard of review in appeals from executive agency decisions. Two somewhat different approaches have arisen in this court following *Morton*. Given the emerging nature of the law, this result is not surprising.

The approach this court originally took is exemplified by *Tasters Ltd. v. Department of Employment Security*, 819 P.2d 361 (Utah App.1991).[8] In *Tasters*, the issue was the Department's interpretation and application of Utah Code Ann. § 35–4–22(j)(5) (Supp.1989) (current version at *id.* § 35–4–22.3 (Supp.1992)). That statute directs the Department to consider twenty factors in determining if an individual is an employee or an independent contractor. We found the language of the statute directing the agency to apply the statute "indicates an explicit grant of discretion" to the agency to determine whether an individual is an employee or an independent contractor. *Tasters*, 819 P.2d at 364. The language the court relied on provided: "unless it is shown to the satisfaction of the commission," the "[commission determines that the] weight of the evidence supports the finding" and "considered [by the commission] if applicable." *Id.* (quoting Utah Code Ann. § 35–4–22(j)(5) (Supp.1989)). Thus, the statute in which we found an explicit grant of discretion authorized the commission to apply specific statutory language.

Other panels have followed the analysis used in *Tasters*. Recently, in *Putvin v. Tax Commission*, 837 P.2d 589 (Utah App. 1992),[9] the case turned on whether the petitioner met the statutory definition of non-resident for Tax Code purposes. We held

the Tax Commission's determination was entitled to deference. In doing so, we recognized a general grant of authority to the Tax Commission to administer the statutes under which it operates and that the Tax Commission often makes determinations of residency status. *Id.* at 590. Thus, it could be argued we found an explicit grant of discretion. We also, however, recognized factors that would support a conclusion an implicit grant of discretion had been given. First, we acknowledged neither the statutory context nor normal statutory construction were helpful in determining what the legislature intended. *Id.* at 591. Second, we recognized the statutory term was subject to several possible interpretations and had been defined by detailed administrative regulations. *Id.* Thus, interpretation of the statute was better left to the policy expertise of the Commission.[10]

While we have not always articulated why we have found a grant of discretion or whether the discretion should be characterized as explicit or implicit, the result has been consistent with *Morton*. In each case the language of the statute and the statutory scheme support a finding of at least an implicit grant of discretion. For example, in *Johnson–Bowles Co. v. Department of Commerce*, 829 P.2d 101 (Utah App.),[11] *cert. denied*, 843 P.2d 516 (Utah 1992), we granted deference to the agency where its statutory scheme provided the executive director could penalize a broker "if he finds that" the broker has "engaged in dishonest or unethical" practices. *Id.* at 114 (quoting Utah Code Ann. § 61–1–6(1) (1989)). We held such language "bespeaks a legislative intent to delegate the interpretation of what constitutes dishonest and unethical practices in the securities industry . . . ."

---

**8.** Opinion by Judge Jackson with Judges Garff and Greenwood concurring.

**9.** Opinion by Judge Billings with Judges Jackson and Russon concurring.

**10.** Judge Bench has expressed a concern that what we did in *Putvin* was find an explicit grant of discretion to the Tax Commission by virtue of

Utah Code Ann. § 59–12–118 (1992). *See Belnorth Petroleum Corp. v. Tax Comm'n*, 845 P.2d 266, 268–69 n. 5 (Utah App.1993). We agree the discretion we found in *Putvin* is better characterized as an implicit grant under *Morton*.

**11.** Opinion by Judge Russon with Judges Jackson and Orme concurring.

*Id.* Hence, although we did not articulate it, what we did under *Morton* was find the statutory language "broad and expansive" and capable of multiple interpretations thus indicating an implicit grant of discretion by the legislature.

Likewise, in *Department of Air Force v. Swider*, 824 P.2d 448 (Utah App.1991),[12] we did not articulate the exact step under the *Morton* analysis where we found the agency had been granted discretion by the legislature. In *Swider*, an aircraft mechanic had been discharged from employment at Hill Air Force Base for drug use. He applied for unemployment benefits and after a hearing by an ALJ was granted them. The Board of Review upheld the ALJ's decision. The Air Force challenged the Board's conclusion the defendant was not " 'culpable' for the purposes of establishing a 'just cause' termination." *Id.* at 450. We found statutory language permitting a denial of benefits if a termination was for " 'just cause ... *if so found by the commission* '" constituted the requisite grant of discretion. *Id.* at 451 (emphasis in original) (quoting Utah Code Ann § 35–4–5(b)(1) (Supp.1991)). Under *Morton*, this was the appropriate result because the operative language authorized the Board to interpret and apply specific statutory language. As the supreme court noted would often be the case, the standard of review is the same as that we would have applied under the prior approach where we granted deference based on agency expertise. *Morton*, 814 P.2d at 588. *See also Bhatia v. Department of Employment Sec.*, 834 P.2d 574, 577 (Utah App.1992)[13] (following *Swider* ); *Robinson v. Department of Employment Sec.*, 827 P.2d 250, 252 (Utah App.1992)[14] (finding explicit grant of discretion based on statutory language authorizing agency to determine issue of "voluntariness" and "good cause"). *See also Valgardson Housing Sys. Inc. v. Tax Comm'n*, 849 P.2d 618, 620–21 (Utah App.1993) (finding implicit grant of discretion in Utah Code Ann. § 59–12–102(13) (1987)).

Recently, Judge Bench has articulated a slightly different view of the appropriate analysis mandated by *Morton*. Under his reading, the first question is whether there is an explicit grant of discretion to the agency.[15] *Ferro v. Department of Commerce*, 828 P.2d 507, 510 & n. 5 (Utah App.1992)[16] (citing *Morton*, 814 P.2d at 589). If there is an explicit grant of discre-

---

**12.** Opinion by Judge Orme with Judges Jackson and Russon concurring.

**13.** Opinion by Judge Billings with Judge Garff concurring and Judge Bench concurring with opinion.

**14.** Opinion by Judge Garff with Judges Greenwood and Russon concurring.

**15.** Creative counsel might read Judge Bench's dissent in *Luckau v. Board of Review*, 840 P.2d 811 (Utah App.1992) and his concurrence in *Bhatia* as indicating we must look to see if the statute is unambiguous before we look for an explicit grant of discretion. *See Luckau*, 840 P.2d at 817 (Bench, P.J., dissenting); *Bhatia*, 834 P.2d at 581 n. 4 (Bench, P.J., concurring).

The *Luckau* dissent cites language from *Ferro v. Department of Commerce*, 828 P.2d 507 (Utah App.1992) regarding implicit grants of discretion in its assertion that ambiguity is the first step. *See Luckau*, 840 P.2d at 817 (Bench, P.J., dissenting). In *Ferro*, the language cited in *Luckau* came after Judge Bench's discussion of explicit grants of discretion and before his discussion of implicit grants of discretion. *See Ferro*, 828 P.2d at 510. The *Bhatia* footnote cites *Mor–Flo Industries, Inc. v. Board of Review*, 817 P.2d 328 (Utah App.1991) to support the assertion: "We may not defer to an agency's interpretation until we know the legislature itself did not render its own discernable statutory interpretation." *Bhatia*, 834 P.2d at 581 n. 4 (Bench, P.J., concurring). While this language could be interpreted as requiring an assessment of ambiguity first, it does not appear to be what was intended. If we followed that analysis, we would attempt to interpret the statute whether there was a grant of discretion to the agency or not.

Thus, we believe there is agreement that the court's first task is to look for an explicit grant of discretion. If we were to ignore an explicit grant of discretion and apply a plain language test first, we would ignore the legislature's intent to grant the agency discretion. Therefore, counsel should not read *Luckau*, *Bhatia*, and *Mor–Flo* as requiring this court to assess ambiguity prior to assessing whether a grant of discretion exists.

**16.** Opinion by Judge Bench with Judge Russon concurring and Judge Billings concurring in the result only.

tion the court applies a deferential standard of review. *Bhatia*, 834 P.2d at 581 (Bench, P.J., concurring). As one of the keys to this analysis, Judge Bench has indicated what he thinks the supreme court meant when it spoke of "explicit grants of discretion." In his view, that term means the "legislature must direct or authorize the agency to define the statutory term by rule." *Id.*[17] If no explicit grant exists then the court determines whether the statute is ambiguous. *Ferro*, 828 P.2d at 510. If not, the court "applies the statute according to its plain meaning." *Id.* If the statute is ambiguous the court attempts to apply the traditional rules of statutory construction. *Id.* If it can do so, and divine the intent of the legislature, it applies a correction of error standard. *Id.* If traditional statutory construction does not produce a legislative intent the court will then assume the legislature intended for the agency to make a judgment concerning the appropriate policy and find an implicit grant of discretion. *Id.* at 510–11.

There are two major distinctions between the analysis Judge Bench has recently advocated and that applied in some earlier cases. First, opinions applying the earlier analysis have found explicit legislative grants of discretion in statutory language which is much broader than simply a legislative directive to define a term by rule. Second, rather than applying plain meaning and other statutory construction methods as independent steps in the analysis, the earlier opinions use statutory construction as a tool in deciding whether the statute contains an implicit grant of discretion.

We turn now to Utah Supreme Court cases to determine whether they have applied the analysis articulated by Judge Bench or the broader one used in the earlier opinions issued by this court. *Morton* itself provides the answer. In footnote 40, the court gives the following example of an explicit grant of discretion by the legislature.

> For example, section 59–12–104(16) provides for "sales or leases of machinery and equipment purchased or leased by a manufacturer for use in new or expanding operations (excluding normal operating replacements ... *as determined by the commission*)." (Emphasis added.)

*Morton*, 814 P.2d at 589 n. 40. This illustration does not show a specific legislative directive to define a statutory term by rule as Judge Bench would require. Rather, it is a grant of authority to the commission to interpret or apply statutory language. This language constitutes the explicit grant of discretion that requires a reviewing court to apply an intermediate standard of review to agency action under the statute.

Additionally, *Morton* twice states the question the court is reviewing is one of "statutory construction *or application*, and absent a grant of discretion, the Commission's decision will be reviewed" for correctness. *Id.* at 589 & 592 (emphasis added). Thus, it is not simply interpretation or definition of statutory language we review under section 63–46b–16(4)(h)(i), but application of that language as well. Moreover, *Morton* discusses agency actions in terms of "dealing with statutory terms" and "dealing with an issue," not "interpreting" or "defining" statutory terms. *See id.* at 588 & 589. Likewise, nothing in the language of section 63–46b–16(4)(h)(i) supports the limitation Judge Bench proposes. Consequently, *Morton* refutes a cornerstone of Judge Bench's analysis, that an explicit grant of discretion can only be found in language directing the agency to define a statutory term by rule.

Furthermore, in *Union Pacific Railroad Co. v. Tax Commission*, 842 P.2d 876 (Utah 1992), a post *Morton* opinion, the Utah Supreme Court applies the broader analysis. In that case the railroad chal-

---

**17.** *See also Chevron U.S.A., Inc. v. Tax Comm'n*, 847 P.2d 418, 420, n. 6 (Utah App.1993) (Opinion by Bench, J.; Garff, J., concurring; Russon, J., concurring in the result) (finding no explicit grant under Judge Bench's definition); *Belnorth Petroleum Corp. v. Tax Comm'n*, 845 P.2d 266, 267–69 (Utah App.1993) (Opinion by Bench, J.; Garff and Russon, JJ., concurring) (same).

lenged some determinations of the Tax Commission. The court, without identifying whether it found an explicit or implicit grant of discretion, held the Commission had discretion to interpret the statutory terms "repairs" and "renovations." *Id.* at 883–84. Regardless of whether the supreme court found an explicit grant or an implicit grant, it looked for a grant of discretion prior to construing the statute on its own, as have our earlier opinions.

In addition, the court has frequently found implicit grants of discretion and has not applied statutory construction as a separate step in its analysis. *See, e.g., BJ-Titan Serv. v. Tax Comm'n,* 842 P.2d 822, 827–28, (Utah 1992) (holding Utah Code Ann. § 59–15–4(1) (Supp.1986) (current version at *id.* § 59–12–103(1)(a) (1992)) contains implicit grant of discretion); *Chicago Bridge & Iron Co. v. Tax Comm'n,* 839 P.2d 303, 306–08 (Utah 1992) (applying reasonableness review to Tax Commission's determination individual is a "real property contractor" because such determination is based in part on law and in part on fact). As with our earlier opinions, the supreme court uses statutory construction as a tool in ascertaining whether an implicit grant of discretion exists. *See, e.g., Nucor Corp. v. Tax Comm'n,* 832 P.2d 1294 (Utah 1992) (applying reasonableness review to agency's interpretation of statutory language based on implicit grant because language subject to multiple interpretations).

We now articulate the analytical model we have derived from *Morton* for determining if the more deferential standard of 63–46b–16(4)(h)(i) is to be utilized in reviewing an agency action. This model applies in all UAPA cases dealing with either the interpretation or application of agency-specific law by an agency. First, we determine whether the legislature explicitly granted discretion to the agency to interpret or apply statutory language at issue. As Judge Bench has rightly noted, we can find an explicit grant of discretion in specific statutory language directing the agency to define a statutory term by regulation. Additionally, a statute directing the agency to interpret or apply specific statutory language should be interpreted as an explicit grant of discretion. If we find such a grant, we review under section 63–46b–16(4)(h)(i) for abuse of discretion. That is, we afford the agency some deference and assess whether its action is within the bounds of reasonableness.

Second, if we do not find an explicit grant of discretion, we examine the language of the statute and the statutory framework for an implicit grant of discretion.[18] If the statutory language is broad and expansive or subject to numerous interpretations we will assume the legislature has chosen to defer to the policy making expertise of the agency and we will find an implicit grant of discretion and review the action under section 63–46b–16(4)(h)(i) for abuse of discretion. If, on the other hand, the language is unambiguous and we can interpret and apply the statutory language by the traditional methods of statutory construction, utilizing our own expertise to divine the legislative intent, we review the agency action under section 63–46b–16(4)(d) for correction of error.

Utah Code Ann. § 35–1–45 (1988) is the portion of the Utah Workers' Compensation Act at issue here. Without articulating the analysis we have set out above, we have previously held "section 35–1–45 does not expressly or impliedly grant discretion to the Industrial Commission...." *Cross v. Board of Review,* 824 P.2d 1202, 1204 (Utah App.1992). *Accord Stokes v. Board of Review,* 832 P.2d 56, 58 (Utah App.1992). This holding is in harmony with the analysis we explain today.

Section 35–1–45 does not contain a directive to interpret or apply a statutory

**18.** We note, as the court did in *Morton,* the ways we articulate of finding a legislative grant of discretion are not exhaustive. In the appropriate circumstances we could find a grant of discretion via an analysis yet unarticulated. *See Morton,* 814 P.2d at 589 (noting other methods of finding deference might arise).

term. Thus, it does not contain an explicit grant of discretion. Further, because the language is not broad and expansive but is narrow and mandatory and is subject to construction by traditional rules of statutory construction, the statute does not contain an implicit grant of discretion. We, therefore, review the Industrial Commission's action under section 35-1-45 under UAPA section 63-46b-16(4)(d) for correctness. *Accord Stokes,* 832 P.2d at 58; *Cross,* 824 P.2d at 1204.

## TEMPORARY TOTAL DISABILITY COMPENSATION

On appeal, King claims he has been denied his statutory right to temporary total disability compensation. The Industrial Commission argues King was appropriately denied benefits because the extended period of his disability was due to his "incarceration and the unavailability of medical care, circumstances over which the defendants had no control." The Industrial Commission concedes that workers' compensation benefits should not be terminated merely as a result of incarceration. Instead, the Commission, in denying benefits, focuses on the extension of the period of King's disability as a result of his incarceration.

### A. Workers' Compensation Act

Workers' compensation is a statutorily-created benefit. *See* Utah Code Ann. §§ 35-1-1 to -107 (1988 & Supp.1992). Section 35-1-45 is the provision of the Utah Workers' Compensation Act relevant in the instant case. It provides:

> Each employee . . . who is injured . . . by accident arising out of and in the course of his employment, wherever such injury occurred, if the accident was not purposely self-inflicted, *shall be paid compensation* for loss sustained on account of the injury or death, and such amount for medical, nurse, and hospital services and medicines. . . . The responsibility for compensation and payment of medical, nursing, and hospital services and medi-

cines, and funeral expenses provided under this chapter shall be on the employer and its insurance carrier and not on the employee.

*Id.* § 35-1-45 (1988) (emphasis added).

▮ Once awarded, temporary total workers' compensation benefits "are to continue 'until [the claimant's] condition has *stabilized.*'" *Booms v. Rapp Constr. Co.,* 720 P.2d 1363, 1366 (Utah 1986) (quoting *Entwistle v. Wilkins,* 626 P.2d 495, 497 (Utah 1981)). Medical stabilization is the time when " 'the period of healing has ended and the condition of the claimant will not materially improve.'" *Reddish v. Sentinel Consumer Prod.,* 771 P.2d 1103, 1104 (Utah App.1989) (quoting *Booms,* 720 P.2d at 1366). "When a claimant reaches medical stabilization, he is no longer eligible for temporary benefits and his status must be reassessed." *Griffith v. Industrial Comm'n,* 754 P.2d 981, 983 (Utah App. 1988). Medical stabilization is independent of the ability of the claimant to return to work. *Reddish,* 771 P.2d at 1104. Thus, "temporary disability benefits are properly discontinued as soon as the point of medical stabilization is reached, regardless of whether the claimant is actually able to return to work." *Id.*

King's injury did not achieve medical stabilization until corrective surgery was performed. During the period of his incarceration he was not medically stabilized. Therefore, unless an exception is applied, under the Utah workers' compensation scheme, King qualifies for benefits for the period of his incarceration and the period after his release until corrective surgery was performed.

### B. Incarceration

▮ Whether a claimant who is not medically stabilized may be denied temporary total disability compensation while incarcerated is an issue of first impression in Utah. Other jurisdictions are split on the issue of whether one receiving workers' compensation benefits loses those benefits

upon incarceration. However, many courts which have considered the issue have concluded disability benefits should be paid to an incarcerated claimant.[19] A review of the reasoning articulated by some of the courts awarding benefits is helpful in our resolution of this first impression issue.

*In re Spera,* 713 P.2d 1155 (Wyo.1986), is a particularly well-reasoned decision. In *Spera,* the claimant received temporary total disability payments until January 21, 1985, the date the district court learned he had been incarcerated. The court ordered the suspension of further payments while the claimant remained in jail. The district judge reasoned incarceration, rather than the work-related injury, was the legal intervening cause of his lost wages.[20] In reversing the district court's suspension of payments, the Wyoming Supreme Court held a worker's incarceration does not require a suspension of temporary total disability payments. *Id.* at 1158.

Stressing that workers' compensation law is based on "contract" rather than tort principles, the *Spera* court held the worker's right to benefits arises when he suffers a work-related injury. *See id.* at 1156–57. The court explained the Wyoming workers' compensation scheme "is based on a concept of industrial insurance,"

which means "it is based on contract rather than tort principles." *Id.* at 1156. Under contract principles the worker should not be denied benefits unless a provision in the statutory contract between the worker, the state, and the employer explicitly suspends the benefits. The court explains:

> Instead of suing his employer for negligence and having to prove duty, breach, proximate cause, and damages, the worker in our state must file for worker's compensation benefits for which his employer is ultimately liable. Essentially, the system provides disability insurance coverage for the worker. His right to benefits arises when certain conditions precedent occur, primarily, when he suffers a disabling work-related injury. Under contract principles, the worker should not be denied his benefits after the contingency arises, unless a provision in the statutory contract between the worker, on the one hand, and the State and employer, on the other, explicitly suspends the benefits.
>
> ... Benefits under the statute terminate only when the worker recovers because only then does he regain his earning power. Incarceration has no effect upon benefits which are in the nature of insurance which has become payable as a covered loss....

**19.** *See, e.g., United Riggers Erectors v. Industrial Comm'n,* 131 Ariz. 258, 640 P.2d 189 (App.1981) (awarding benefits because incarceration was not voluntary removal from job market and there was no legislation taking away these benefits); *Bearden v. Industrial Comm'n,* 14 Ariz. App. 336, 483 P.2d 568 (1971) (holding right to workers' compensation not forfeited during incarceration if sentence less than life because no statute so provides and this is an issue which should be determined by the legislature); *Crawford v. Midwest Steel Co.,* 517 So.2d 918 (La. App.1987) (holding claimant entitled to benefits despite incarceration because statute does not provide otherwise); *DeMars v. Roadway Express, Inc.,* 99 Mich.App. 842, 298 N.W.2d 645, 647 (1980) (affirming total disability compensation despite felony conviction because denial of benefits under such a situation "is not the province of the Board or the judicial branch"); *Forshee & Langley Logging v. Peckham,* 100 Or.App. 717, 788 P.2d 487 (1990) (holding claimant entitled to temporary total disability during incarceration because he was never medically sta-

tionary nor released for work during incarceration); *Last v. MSI Constr. Co.,* 305 S.C. 349, 409 S.E.2d 334 (1991) (awarding incarcerated claimant temporary total disability benefits); *In re Spera,* 713 P.2d 1155 (Wyo.1986) (holding under contract principles incarcerated claimant should not be denied temporary total benefits, which under the statute terminate only when the worker recovers and regains his earning power). *But see State ex rel. Grennan v. Barry,* 71 Ohio App.3d 385, 594 N.E.2d 51 (1991) (holding employee not entitled to compensation during period of incarceration); *State ex rel. Ashcraft v. Industrial Comm'n,* 34 Ohio St.3d 42, 517 N.E.2d 533 (1987) (denying temporary total disability compensation because incarceration was "voluntary" act removing claimant from work force).

**20.** Similarly, the ALJ denied King benefits on the basis his incarceration was an intervening cause.

. . . .

... The worker's disability payments cannot be characterized as mere governmental largesse that can be eliminated when the worker's needs are fulfilled from another governmental source. Rather, the worker's statutory right to disability payments is akin to a contract right. Nobody would argue, in the private insurance context, that an insurer could withhold payments due under an insurance contract just because the insured had a second policy which covered the same disability....

We believe this same principle should apply to industrial insurance created by statute. Because there is no statutory exception which eliminates benefits when a worker is jailed, the benefits are due the worker even if his needs are fulfilled from another governmental source. The state legislature can change our statute to suspend payments during periods of incarceration, much like a private insurer might place conditions on his coverage. *But in the absence of legislation, we decline the State's invitation to make that policy shift ourselves.*

*Id.* at 1157–58 (citation omitted) (emphasis added).

Similarly, in *Bearden v. Industrial Commission,* 14 Ariz.App. 336, 483 P.2d 568 (1971), the claimant was awarded temporary disability for a compensable industrial injury and then incarcerated in the Arizona State Prison following a felony conviction. The Arizona Court of Appeals reversed the denial of benefits and held the right to workers' compensation was not forfeited or suspended during a period of incarceration. *See id.,* 14 Ariz.App. at 343, 483 P.2d at 575. In reaching this conclusion, the *Bearden* court reviewed relevant provisions of Arizona's workers' compensation statutes. Arizona's statutes simply provided that benefits "shall be paid." *Id.* at 341, 483 P.2d at 573. The court enumerated provisions of the statutes which suspended or

reduced workers' compensation under specified circumstances. As with Utah's statutes, Arizona's statutes contained no provision for the forfeiture or suspension of workers' compensation benefits based on incarceration. The court stated "the Arizona Legislature has not provided for the forfeiture or suspension of compensation and accident benefits during the period of the prison confinement of a claimant serving a sentence less than life." *Id.* The *Bearden* court concluded:

No constitutional or statutory provision relating directly to workmen's compensation has been brought to our attention which declares that a person whose civil rights are suspended ... thereby forfeits his right to compensation.... Whether that should be the law is a matter of public policy which should be determined by the Legislature.

*Id.* at 341–42, 483 P.2d at 573–74.

Likewise, in *Forshee & Langley Logging v. Peckham,* 100 Or.App. 717, 788 P.2d 487 (1990), the claimant was awarded temporary total disability compensation prior to incarceration. Like King, the claimant in *Forshee* was neither medically stabilized nor released for regular work during the period of his incarceration. In affirming the award of benefits, the absence of legislation specifically terminating benefits upon incarceration was significant to the *Forshee* court. "It is the legislature's province to restrict the ability of incarcerated individuals to collect workers' compensation and, in some situations, it has done so. We decline employer's suggestion that we create additional exceptions that have no basis in the statute." *Id.* 788 P.2d at 488 (citation & footnote omitted).

Thus, the absence of a provision in the state's workers' compensation statutes specifically denying disability benefits to claimants during periods of incarceration is a significant factor in the analysis of many courts when awarding benefits to incarcerated claimants.[21] As with numerous other jurisdictions, Utah's Workers' Compensa-

---

**21.** The absence of specific legislation providing

for suspension of workers' compensation bene-

tion Act has no provision terminating benefits because of a claimant's incarceration.

■ Omissions in the Workers' Compensation Act are significant and the "statute should be applied according to its literal wording." *Traylor Bros., Inc./Frunin–Colnon v. Overton,* 736 P.2d 1048, 1052 (Utah App.1987). Significantly, as noted in their caselaw, several states have enacted legislation which specifically terminates workers' compensation benefits after a claimant has been incarcerated.[22]

Furthermore, the Utah Legislature has chosen to restrict workers' compensation benefits under certain circumstances. For example, section 35–1–14 provides for a fifteen percent reduction in compensation for an employee's failure to use safety devices, failure to obey employer's safety rule, or employee's intoxication. *See* Utah Code Ann. § 35–1–14 (1988). Similarly, section 35–1–45 suspends benefits when the accident was "purposely self-inflicted." *Id.* § 35–1–45. Thus, it is clear the Utah Legislature knows how to limit workers' compensation benefits, and does so when it so desires.

■ We therefore hold the absence of a statutory provision limiting workers' compensation benefits upon a claimant's

incarceration mandates a conclusion that temporary total benefits should be awarded to King. Moreover, the Utah Workers' Compensation Act is based on contract principles and an employee's right to benefits arises when he suffers a work-related injury. Absent an explicit statutory provision, the Industrial Commission is not free to reduce statutorily-created benefits. "The Industrial Commission is not free to 'legislate' in areas apparently overlooked by our lawmakers or to exercise power not expressly or impliedly granted to it by the legislature, even in the name of fairness." *Bevans v. Industrial Comm'n,* 790 P.2d 573, 578 (Utah App.1990).

In Utah, workers' compensation is the employee's exclusive remedy against an employer for an industrial injury, a fact which further supports an award of benefits to King. *See* Utah Code Ann. § 35–1–60 (1988). Under our statutory scheme, King relinquished his right to sue his employer for his industrial injury in exchange for workers' compensation benefits. King's incarceration would not have cost him the right to sue his employer under the common law. Absent legislative action, that incarceration should not cost him his right to workers' compensation.

The Workers' Compensation Fund contends *Griffith v. Industrial Commission,*

fits upon a claimant's incarceration is a significant factor to courts from other jurisdictions awarding benefits to *temporarily* disabled incarcerated claimants. *See Bearden,* 14 Ariz.App. at 341–42, 483 P.2d at 573–74 (deciding terminating temporary total benefits was matter of public policy which should be determined by legislature); *Forshee,* 788 P.2d at 488 (reasoning legislature's province to restrict ability of incarcerated individuals to collect workers' compensation); *In re Spera,* 713 P.2d 1155 (Wyo.1986) (holding determination of when payments should be suspended is matter that should be left to legislature).

Likewise, the absence of legislation providing for suspension of workers' compensation benefits during incarceration is also important in the analysis of courts which awarded benefits to *permanently* disabled claimants who were incarcerated. *See United Riggers,* 640 P.2d at 193 (awarding benefits because incarceration was not voluntary removal from job market and there was no legislation taking away these bene-

fits); *Crawford v. Midwest Steel Co.,* 517 So.2d 918 (La.App.1987) (holding claimant entitled to benefits despite incarceration because statute does not provide otherwise). *See also DeMars,* 298 N.W.2d at 647 (affirming total disability compensation despite felony conviction because denial of benefits under such a situation "is not the province of the Board or the judicial branch"). *But see Packard v. Donald Sperry & Sons,* 331 N.Y.S.2d 126, 39 A.D.2d 622 (N.Y.App. Div.1972) (holding claimant not entitled to compensation during incarceration); *White v. Industrial Comm'n,* No. L–92–040, 1992 WL 348158 (Ohio App. Nov. 27, 1992) (suspending permanent total disability benefits because incarceration amounted to a voluntary abandonment of work).

22. *See, e.g., White v. Industrial Comm'n,* No. L–92–040, 1992 WL 348158 (Ohio App. Nov. 27, 1992); *Wood v. Beatrice Foods Co.,* 813 P.2d 821 (Colo.App.1991); *Jones v. Department of Corrections,* 185 Mich.App. 65, 460 N.W.2d 229 (1990).

754 P.2d 981 (Utah App.1988), supports the denial of benefits in this case. In *Griffith,* we affirmed a denial of benefits where the claimant's disability was prolonged due to a delay in corrective surgery for reasons unrelated to the industrial accident. However, the Industrial Commission's reliance on *Griffith* is misplaced.

In *Griffith,* the claimant received temporary total disability benefits for an industrial injury to his ankle. An orthopedic surgeon evaluated his ankle and recommended surgical reconstruction. The Commission concluded the healing period had ended and the claimant's medical condition had stabilized. An internist who evaluated the claimant's hypertension and asthma advised that ankle surgery be postponed until the hypertension and asthma were treated. The Industrial Commission determined the employer was not liable for temporary total disability for the period which the claimant's hypertension and asthma had to be controlled so surgery could be safely performed. The Commission reasoned that surgical repair had to be delayed because of other medical problems, not for further treatment of claimant's ankle. In affirming the Commission's denial of temporary total disability, we found "that the Commission's conclusion that plaintiff's ankle injury had reached medical stability on May 2, 1985 ... [was] not arbitrary and capricious because ... [it was] supported by substantial evidence on the record." *Id.* at 984.

Unlike King, in *Griffith* the claimant's condition had reached stabilization, a prerequisite for termination of temporary total disability payments. *See Booms v. Rapp Constr. Co.,* 720 P.2d 1363, 1366 (Utah 1986). *Accord Greyhound Lines, Inc. v. Wallace,* 728 P.2d 1021, 1022 (Utah 1986); *Reddish v. Sentinel Consumer Prod.,* 771 P.2d 1103, 1104 (Utah App.1989). In *Griffith,* workers' compensation benefits were

properly discontinued. Thus, *Griffith* provides no support for the Industrial Commission's argument.

Counsel for the Workers' Compensation Fund also suggests we should adopt a rule that as long as circumstances which delay the claimant's surgery are beyond the control of the insurer, the insurer should not be required to pay temporary total disability compensation. Such a rule, however, makes no sense. It would permit the insurer to terminate benefits whenever they deem the claimant's surgery to be sufficiently "delayed," resulting in subjective and arbitrary determinations.[23] Would the Industrial Commission terminate benefits if King's surgery was delayed only eight days instead of eight months? Indeed, at oral argument counsel for the Industrial Commission indicated that if King's disability had been prolonged for a shorter period the Commission would not have challenged the payment of disability benefits.

## CONCLUSION

Because Utah's Workers' Compensation statutes do not have specific language limiting benefits for incarcerated recipients of temporary total disability payments, such benefits must be paid until the claimant's medical condition has stabilized. The termination of benefits is a policy matter which must be addressed by the Utah Legislature, not by this court or by the Industrial Commission. Accordingly, we reverse the Industrial Commission's ruling and remand this matter for determination of benefits.

GREENWOOD, J., concurring.

RUSSON, Associate Presiding Judge (concurring in result):

I concur in the result. We have previously set forth the proper standard of re-

---

**23.** For example, under such a rule, an insurer could terminate a claimant's temporary total disability compensation if only one surgeon had the skill to perform corrective surgery but was

unable to schedule surgery for three months or was unavailable because he was called to active service as a member of the military reserves.

view for appeals from the Industrial Commission's denial of compensation under Utah Code Ann. § 35-1-45 (1988) in *Cross v. Board of Review*, 824 P.2d 1202, 1203-04 (Utah App.1992). At the time of that decision, the proper post-UAPA standard of review for appeals under section 35-1-45 was an issue of first impression in Utah. In *Cross*, we determined that section 35-1-45 contained no express or implied grant of discretion to the Industrial Commission. *Id.* at 1204. That decision stands unchallenged as the correct law on the very point raised in this case, and the majority expressly acknowledges this in its opinion. Thus, in light of *Cross*, and the doctrine of stare decisis as enunciated in *State v.*

*Thurman*, 846 P.2d 1256, 1268-71 (Utah 1993), I find the majority's protracted examination of the appropriate standard of review in this case unwarranted.