Carl BOYD, Keith E. Johnson, Dwane K. Remund, Wayne L. Jensen, Charles G. Allred, Jay M. Olsen, Plaintiffs,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

Nos. 880314–CA, 880317–CA, 880320–CA, 880321–CA, 880322–CA and 880330–CA.

Court of Appeals of Utah.

April 21, 1989.

Douglas A. Baxter, Springville, for plaintiffs.

Alan Hennebold, Salt Lake City, for defendant.

Before DAVIDSON, BENCH and ORME, JJ.

OPINION.

ORME, Judge:

Plaintiffs challenge separate decisions by the Board of Review of the Industrial Commission denying them unemployment benefits. Plaintiffs claim the Board of Review improperly denied them benefits on the ground they failed, without good cause, to pursue employment referrals made by the Department of Employment Security. We conclude the Board of Review erred in withholding benefits and remand for further proceedings.

FACTS

Plaintiffs were employed in varying capacities with United States Steel Corporation ("USX") at its Geneva Works. In early 1987, USX announced the closure of that facility. As a result of the Geneva closure, each plaintiff was entitled to participate in a special retirement program available to a limited number of qualifying, long-term employees. Benefits under this program would eventually include a monthly $400 shutdown benefit until the worker became eligible for social security and special pension benefits. These benefits did not take effect immediately upon USX's closure. Rather, the benefits would begin varying periods of time, but as long as two years, after the particular employee last worked for USX.

In September 1987, a group of investors, referred to by the parties as "BM & T," purchased the Geneva Works. Part of the agreement between BM & T and USX was that all eligible employees who wished to avail themselves of the special retirement program would not be offered a job with BM & T. However, if such an employee accepted work with BM & T and remained there for more than forty-five days, that employee would lose all benefits under the program, unless the BM & T plant closed within two years. Acceptance of employment other than with BM & T would not jeopardize such an employee's benefits.

Plaintiffs did not seek employment with BM & T because they did not want to risk losing their valuable retirement benefits.

They did seek employment in other fields and, while unemployed, they applied for unemployment benefits to tide them over during the period between the USX closure and the commencement of their retirement benefits or securing of other work. In October 1987, plaintiffs were called into the Department's office in Provo where they were given referrals for employment at BM & T. All six plaintiffs declined the referrals, preferring to protect their USX retirement benefits. The Department's initial adjudicator then denied plaintiffs future unemployment benefits pursuant to Utah Code Ann. § 35–4–5(c) (1988), on the ground they had refused to accept an offer of suitable work. At least some of the plaintiffs were also ordered to refund all unemployment insurance benefits already received or to carry that amount as a credit against future unemployment benefits.

Plaintiffs pursued appeals first with one of the Department's appeal referees and then with the Board of Review of the Industrial Commission. The Board affirmed the denial of post-referral benefits, but on different grounds. The Board did not agree that plaintiffs had actually received an offer of work from BM & T and refused that offer. Instead, the Board denied post-referral unemployment benefits on the ground that each plaintiff had, without good cause, rejected a *referral* for available suitable work with BM & T.[1] It is from this determination that plaintiffs seek relief.

### GOOD CAUSE

This case is governed by Utah Code Ann. § 35–4–5(c) (1988), which provides in pertinent part as follows:

> An individual is ineligible for benefits ... [i]f the commission finds that the claimant has failed without good cause ... to accept a referral to suitable work offered by the employment office.

Plaintiffs claim they had good cause to refuse the BM & T referral under the Department's rules, which define "good cause" to include the avoidance of potential economic harm.

The Department's rule defining "good cause" provides as follows:

> Good cause for failure to obtain an available job is established if the job is not suitable to the claimant or acceptance of the job would cause a hardship on the claimant. Hardship is not established unless acceptance of the employment would cause *actual or potential* physical, mental, *economic,* personal or professional harm. Good cause for not obtaining the job is also established if the elements which establish good cause for quitting a job are present.

Utah Admin.R. 475–5c–7 (1987–88) (emphasis added).

Plaintiffs were all eligible for substantial benefits under the special retirement program. However, as previously mentioned, those benefits would not become payable for some time, as long as two years in some instances. Plaintiffs were not seeking unemployment benefits while they were receiving retirement benefits, which would clearly subvert the purpose of the unemployment compensation program. On the contrary, plaintiffs were seeking assistance only during the interim period until their USX benefits "kicked in." If they pursued the Job Service referral, accepted employment with BM & T, and worked for BM & T for a period of more than 45 days, they would lose those benefits—unless the plant closed again within two years. It seems inarguable to us that plaintiffs' acceptance of the referrals would be, as an objective matter, potentially harmful economically.[2] Their retirement benefits were otherwise "vested" and, on commencement, would total between $900 and $1300 per month. While plaintiffs would have received wages or salary in excess of that

---

1. This distinction having been made, the Board held that plaintiffs were entitled to retain benefits they had received up to the time of their respective referrals.

2. As a general proposition, "good cause" in the context of unemployment compensation is determined objectively. *Denby v. Board of Review,* 567 P.2d 626, 630 (Utah 1977) ("such cause as would similarly affect persons of reasonable and normal sensitivity").

amount if they went to work for BM & T, there were no guaranties that such employment would continue. The choice between whether to accept vested benefits or risk those benefits by working for an unknown and unproven employer, necessarily turned on an assessment of the comparative risks. The reasonableness of plaintiffs' decision is demonstrated by this fact: If plaintiffs went to work for BM & T and were laid off after 45 days, but the plant stayed open for the slightest period in excess of two years —even if the plant were just barely limping along—they would have lost, entirely, their substantial benefits under USX's special retirement program.[3]

The Department argues that plaintiffs would be in a better economic position had they taken jobs with BM & T. While, with the benefit of hindsight, this may be true, it is obvious that the economically prudent course for plaintiffs, at the time, was to refuse to work for BM & T and instead take full advantage of their USX benefits. The Department's own rule recognizes that potential economic harm is good cause to refuse a referral. The rule does not make an exception for situations such as the one at hand.

In opposition to the conclusion which seems so plain to us in view of the Department's own rule, the Department raises two further arguments. First, the Department reminds us of the deferential standard of review to which it is entitled. Second, the Department invokes another of its rules, one dealing expressly with retirement benefits.

## STANDARD OF REVIEW

The Board's decisions are entitled to a certain amount of deference. Nonetheless, the Department's interpretation of the "operative provisions of The Employment Security Act" must be within the limits of reasonableness and rationality. *Adele's Housekeeping, Inc. v. Department of Em-*

*ployment Sec.,* 757 P.2d 480, 482 (Utah Ct.App.1988).

While "[a]n agency's interpretation of key provisions of the statute it is empowered to administer" should be given due weight, *Utah Dep't of Admin. Serv. v. Public Serv. Comm'n,* 658 P.2d 601, 610 (Utah 1983); *accord McPhie v. Industrial Comm'n,* 567 P.2d 153, 155 (Utah 1977), if that agency has "misconstrued or misapplied" the statute "it is the duty of the court to correct the same." *McPhie,* 567 P.2d at 155. In short, we give the Department and Board great deference in their areas of expertise, but that deference is not so expansive as to obligate us to sanction a clear misinterpretation of the Department's own statute and related rules. The Board's decision holding that these plaintiffs lacked "good cause" for refusing an employment referral was unreasonable and irrational given the Department's rule which includes economic factors as a basis for "good cause" and given the economic imperatives which plaintiffs faced.

## RETIREMENT RULE

As noted above, the dispositive rule states that "[g]ood cause for failure to obtain an available job" may also be established by showing "the elements which establish good cause for quitting a job...." Utah Admin.R. 475–5c–7 (1987–88). The rule detailing "good cause" for quitting a job expressly provides that "[l]eaving work solely to accept retirement benefits is not a compelling reason for quitting." Utah Admin.R. 475–5a–7(9) (1987–88).

However, the latter rule is inapplicable to the cases before us. Plaintiffs did not refuse the referral to *accept* retirement benefits. Commencement of those benefits was as much as two years away. Plaintiffs refused the referral to *preserve* the ultimate availability of the retirement benefits. The purpose of the rule is to avoid "double-dipping," an interpretation supported by other language in the rule stating that

---

**3.** Plaintiffs claim there was substantial risk involved in working for BM & T because BM & T was merely a group of five attorneys with very little relevant experience. Of course, the success BM & T has in fact had cannot be allowed to color our assessment of how the situation would reasonably have looked to plaintiffs at the time.

"[a]lthough it may be reasonable for an individual to take advantage of a retirement benefit, payment of unemployment benefits in such a circumstance would not be consistent with the intent of the Unemployment Insurance program." *Id.* This language clearly contemplates the impropriety of *simultaneous* receipt of retirement and unemployment benefits, a result which is not present in this case and is specifically eschewed by plaintiffs.

## CONCLUSION

Plaintiffs had good cause to reject the Department's referrals to BM & T. Plaintiffs were entitled to unemployment compensation during the interim period between being laid off and, as applicable in individual cases, either commencement of their USX retirement benefits, commencement of other employment, or exhaustion of unemployment benefits in the ordinary course. These cases are remanded to the Board of Review for calculation and award of the unemployment benefits to which plaintiffs are entitled.

DAVIDSON and BENCH, JJ., concur.