**Richard L. ROBINSON, Petitioner,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY; and U S West Communications, Respondents.**

**No. 900613–CA.**

Court of Appeals of Utah.

Feb. 13, 1992.

Richard L. Robinson, pro se.

Winston M. Faux, Salt Lake City, for respondent Department of Employment Sec.

Floyd A. Jensen, Salt Lake City, for respondent U S West Communications.

Before GARFF, GREENWOOD and RUSSON, JJ.

## OPINION

GARFF, Judge:

Petitioner Richard L. Robinson appeals a decision by the Board of Review of the Industrial Commission denying him unemployment benefits. We affirm.

### FACTS

In late 1989, U S West Communications offered a two-part early retirement incentive for which 6,000 employees were eligible. U S West's stated purpose for the plan was to reduce the size of its management work force. Part one of the plan added five years to both the age of the employee and the years of employment in calculating pension eligibility and benefits. The second part offered early retirement benefits, including a lump sum payment

option. Eligible managers had to accept the offer and retire by February 28, 1990, after which time it would expire. U S West informed employees it would resort to involuntary layoffs if sufficient numbers of them did not elect early retirement. However, because almost 4,000 managers elected to retire early, U S West did not resort to involuntary layoffs.

As a manager, Robinson qualified for early retirement. He, along with 150 other Utah managers, elected the early retirement offer. On February 28, 1990, the last day of the offer, Robinson terminated his employment. He elected to receive his pension in a lump sum payment of $165,791.65, rather than in monthly payments. In addition, he received a cash-out payment of five weeks of vacation pay.

Robinson invested his pension lump sum in a "roll-over" individual retirement account (IRA). This type of account is designed for moneys received from a qualified retirement plan of a former employer. The funds can later be used in a qualified plan of a subsequent employer. I.R.C. §§ 73, 402, and 408 (Supp.1991).

Shortly after Robinson retired, he filed a claim for unemployment insurance benefits, effective May 10, 1990. He cited "layoff" as the reason for separation. On May 24, 1990, a Department of Employment Security representative found him eligible to receive benefits because he was separated from his employer as part of a reduction in work force. U S West appealed the decision. An administrative hearing was held on June 19, 1990. The Administrative Law Judge (ALJ) affirmed the Department's decision, holding the separation was a layoff pursuant to Utah Code Ann. § 35–4–5(a) (Supp.1991). U S West appealed the ALJ's decision to the Board of Review.

On November 14, 1990, the Board reversed the Department's decision and denied benefits pursuant to Utah Code Ann. § 35–4–5(a)[1] on the grounds that (1) Robinson voluntarily left his employment without good cause, and (2) denial of benefits

would not be contrary to equity and good conscience. The Board's decision was based on findings that the early retirement incentives were designed to avoid or reduce the need for involuntary layoffs, that U S West made no specific plans for layoffs, and that no layoffs occurred.

Robinson petitioned this court to review the Board's decision. He raises the following issues: (1) whether his termination was voluntary, (2) whether his termination was for good cause, and (3) whether denial of benefits would be contrary to equity and good conscience.

## VOLUNTARINESS

Robinson challenges the Board's conclusion that he voluntarily left his employment pursuant to Utah Code Ann. § 35–4–5(a) (Supp.1991).

■ A threshold issue is whether the statute implicitly or explicitly grants the agency deference in applying the language "left work voluntarily without good cause." *Morton Int'l v. Auditing Div.*, 814 P.2d 581, 588–89 & n. 40 (Utah 1991). The pertinent statutory language notes that a person is ineligible for benefits if that person "left work voluntarily without good cause, *if so found by the commission* . . . ." Utah Code Ann. § 35–4–5(a) (emphasis added). The emphasized language explicitly grants the commission discretion to determine issues involving voluntariness and good cause. Accordingly, in reviewing these issues, we defer to the agency and we will not overturn its decisions regarding voluntariness and good cause unless we determine it has abused that discretion. *Morton*, 814 P.2d at 584; Utah Code Ann. § 63–46b–16(4)(h)(i) (1989).

The Department's rule states that a separation is voluntary when "the employee severed the employment relationship as contrasted to a separation initiated by the employer. This is true regardless of how compelling the claimant's reasons were for making the decision to leave the work."

---

1. This section states that a claimant is ineligible for benefits if he or she leaves "work voluntarily without good cause," and if the granting of benefits would not be "contrary to equity and good conscience."

Utah Code Admin.P. R475–5a–1 (1991). Thus, voluntariness "is not the willingness of *the employer* that the unemployment claimant continue working, but rather the willingness *of the claimant* to continue." *Allen v. Department of Employment Sec.,* 781 P.2d 888, 891 (Utah App.1989); *accord, Chandler v. Department of Employment Sec.,* 678 P.2d 315, 320 (Utah 1984).

■ A decision to quit in the face of an impending work force reduction does not render the decision involuntary: "When a worker leaves prior to the date of an impending reduction in force, he will be considered to have quit. A worker has an obligation to remain on the job until the work is completed." Utah Code Admin.P. R475–5a–6(2)(a) (1991). Moreover, even when a worker believes he or she is to be laid off, the worker is obliged to verify his or her interpretation and to work up until the date of discharge. Utah Code Admin.P. R475–5a–6(5) (1991).

■ Robinson brings two arguments to support his claim that his separation was involuntary. First, he claims his early departure was part of a reduction in force, in other words, a layoff. Second, he claims U S West initiated the separation because it presented the early retirement incentives in light of impending layoffs.

Addressing these arguments in order, even if Robinson interpreted U S West's broadly defined plans to reduce its work force to mean he was to be laid off, nevertheless, under the rules, he had the obligation to verify that he was to be terminated, and if so, to work up until the date of the termination. Utah Code Admin.P. R475–5a–6(5) (1991).

Robinson's second argument is overbroad. Using his analysis, *any* retirement could be classified as involuntary because virtually *all* retirement programs are offered, and thus initiated, by the employer. More to the point, U S West initiated only a plan for early retirement, it did not require employees to retire early. Moreover, the same section of the rule notes that the employee's initiation of the separation constitutes a voluntary leave "regardless of how compelling the claimant's reasons

were for making the decision to leave the work." Utah Code Admin.P. R475–5a–1 (1991).

We therefore see no abuse of discretion in the Board's determination that Robinson's termination was voluntary.

## GOOD CAUSE

■ Robinson challenges the Board's finding that he quit without good cause. As discussed above, we review good cause using the same standard as that used for voluntariness. Thus, we will not overturn the Board's finding regarding good cause unless we determine the Board has abused its discretion. *Morton,* 814 P.2d at 584; Utah Code Ann. § 63–46b–16(4)(h)(i).

Through rule-making, the Board has determined that "[g]ood cause is established if continuance of the employment would have had an adverse effect on the claimant which could not be controlled or prevented and necessitated immediate severance of the employment relationship...." Utah Code Admin.P. R475–5a–2(1) (1991). Further, termination of employment "must have been motivated by circumstances which made continuance of the employment a hardship or matter of real concern sufficiently adverse to a reasonable person to outweigh the benefits of remaining employed." Utah Code Admin.P. R475–5a–2(1)(a) (1991).

Moreover, notice of an impending layoff is not good cause to leave in order to get a head start in searching for other work. Utah Code Admin.P. R475–5a–6(2)(a) (1991). Neither is leaving work to accept retirement benefits good cause, even when it would be reasonable to take advantage of the benefits. Utah Code Admin.P. R475–5a–7(9) (1991).

Finally, when a worker can establish actual or potential harm, the worker still must show he or she "reasonably could have continued working while looking for other employment." Utah Code Admin.P. R475–5a–2(1)(b)(1) (1991).

Here, the Board found Robinson did not show actual or potential harm justifying

his voluntary departure. Thus, he did not have good cause to quit. The Board held "[t]he fact [Robinson] left work to take advantage of a very favorable retirement package and not because of any adverse economic circumstances relating to the work, does not constitute a showing of actual or potential economic harm caused or aggravated by continuance in the employment under the ... Rule."

Robinson claims the Board abused its discretion in finding he did not have good cause to quit. Robinson argues he would have suffered actual or potential economic harm had he continued because he would have become ineligible for the early retirement incentives, and he likely would have been laid off.

The Board's finding as to good cause fits hand in glove with its rule that leaving work to accept retirement benefits does not constitute good cause, even when it would be reasonable to take advantage of the benefits. Utah Code Admin.P. R475–5a–7(9) (1991). Moreover, Robinson has not shown that it would have been a hardship for him to continue to work. And, as discussed above, to be eligible for benefits, Robinson would have been obliged to work up until the date of his layoff.

We therefore find the Board did not abuse its discretion in finding Robinson did not have good cause to quit his job.

## EQUITY AND GOOD CONSCIENCE

■ Robinson claims the Board was unreasonable in holding that denial of benefits would not be contrary to equity and good conscience pursuant to Utah Code Ann. § 35–4–5(a) (Supp.1991).

In determining whether it is contrary to equity and good conscience to deny a claimant benefits, the Board is required to "consider ... the reasonableness of the claimant's actions, and the extent to which the actions evidence a genuine continuing attachment to the labor market in reaching a determination of whether the ineligibility of a claimant is contrary to equity and good conscience." Utah Code Ann. § 35–4–5(a).

Here, the statute requires the Board to consider factors such as "the reasonableness of the claimant's actions" and "continuing attachment to the labor market." Because the statute does not further define these terms, and because the terms are broad and generalized, the statute implicitly grants the Board discretion to interpret the terms in determining equity and good conscience. *Morton*, 814 P.2d at 588. We therefore apply a reasonableness standard to this issue also. *Id.* at 584.

The Utah Code of Administrative Procedure Rule R475–5a–3 (1991) requires that certain elements first be established to show equity and good conscience. Those elements critical to our analysis include "the claimant acted reasonably" and "a denial would be inconsistent with the intent of the unemployment insurance program." Utah Code Admin.P. R475–5a–3(1)(b) and (c) (1991). "Reasonable is defined as those actions which make the decision to quit logical, sensible or practical." Utah Code Admin.P. R475–5a–3(2)(b) (1991).

■ As to the intent of the Act, the rule states that the Act's purpose "is to temper the hardships associated with unemployment and to provide stability for the economy by maintaining purchasing power, individual skills and a stable workforce." Utah Code Admin.P. R475–5a–3(2)(c) (1991). More to the point, collecting retirement benefits along with unemployment benefits is contrary to the intent of the act: "Although it may be reasonable for an individual to take advantage of a retirement benefit, payment of unemployment benefits in such a circumstance would not be consistent with the intent of the Unemployment Insurance program, and, therefore, a denial of benefits would not be contrary to equity and good conscience." Utah Code Admin.P. R475–5a–7(9) (1991). *Accord, Bayle v. Board of Review*, 700 P.2d 1135, 1137–38 (Utah 1985); *Boyd v. Department of Employment Sec.*, 773 P.2d 398, 401 (Utah App.1989).

Here, the Board held denial of benefits would not be contrary to equity and good conscience because Robinson "voluntarily chose to retire in order to take advantage

of an extremely generous offer of retirement, while knowing the risks of trying to find other comparable employment." The Board concluded it "would be inconsistent with that purpose [of the Unemployment Insurance laws] to grant unemployment benefits to claimants who upon leaving work received lump-sum retirement benefits averaging approximately $200,000."

Robinson claims he acted reasonably in accepting early retirement, and should therefore be awarded benefits. He further claims he acted reasonably in investing the pension funds into a roll-over IRA account, and that it would have been eminently unreasonable to have accepted his pension in cash form and to have spent it.

Robinson's arguments are without merit. Even if the layoffs were certain, which they were not, to be eligible for benefits, Robinson would have been obligated to work up to the date of his layoff. Utah Code Admin.P. R475–5a–6(2)(a) (1991). Robinson's arguments ignore the fact that he is attempting to receive unemployment benefits in addition to his pension funds. That is, Robinson is attempting to obtain a twofold recovery, which is contrary to the intent of the Act. Utah Code Admin.P. R475–5a–7(9) (1991); *Bayle*, 700 P.2d at 1138; *Boyd*, 773 P.2d at 401.

In short, Robinson could have continued to work and receive a salary. Instead, he chose to retire early and receive his pension funds up front. He has not demonstrated any compelling reason why he should receive both unemployment benefits and his pension benefits, other than the fact that he chose to lock those funds into an IRA. Thus, the Board did not abuse its discretion in concluding it would not be contrary to equity and good conscience to deny benefits.

## CONCLUSION

We therefore hold the Board did not abuse its discretion in finding Robinson voluntarily and without good cause quit his job, and in finding it would not be contrary

to equity and good conscience to deny benefits.

Affirmed.

GREENWOOD and RUSSON, JJ., concur.