1999 UT App 210

**SOS STAFFING SERVICES, INC., Petitioner,**

v.

**WORKFORCE APPEALS BOARD, Department of Workforce Services; Michael Lowrey; and James E. Gray, Respondents.**

No. 981318–CA.

Court of Appeals of Utah.

June 24, 1999.

---

4. Coverage C provides: "We will pay medical expenses as described below for 'bodily injury' caused by an accident."

**582**

W. Mark Gavre and Anne W. Morgan, Parsons, Behle & Latimer, Salt Lake City, for Petitioner.

Suzan Pixton, Salt Lake City, for Respondent Workforce Appeals Board.

Michael Lowrey and James E. Gray, Las Vegas, Nevada, Respondents Pro Se.

Before GREENWOOD, JACKSON, and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1   Petitioner SOS Staffing Services, Inc. seeks judicial review of the Workforce Appeals Board's decisions upholding the Administrative Law Judge's determination that claimants James E. Gray and Michael Lowrey were entitled to unemployment compensation.  SOS asserts that the Board erred because claimants voluntarily terminated their employment.  Because we conclude the Board erroneously applied the governing law, we set aside the Board's decisions and remand for further proceedings.

## BACKGROUND

¶ 2   The facts are essentially undisputed.[1] SOS operates a staffing service for companies needing temporary help.  SOS hires employees and assigns them to particular clients to perform such temporary work.  When an employee's assignment is complete, SOS assigns that employee to a new client.  To receive new assignments, however, employees must report their availability to SOS.

¶ 3   In early 1998, Gray, an SOS employee, was assigned to work at Granite Furniture.  From January 6, 1998, through January 16, 1998, Gray performed this assignment until a temporarily absent Granite employee returned to work.  Upon completion of this assignment, Gray did not inform SOS of his availability for future work and received no further assignments.  Indeed, he moved to Las Vegas, Nevada.

---

1. Notwithstanding the findings of the ALJ and Board to the contrary, the Board now disputes the existence and terms of claimants' contractual promise to inform SOS of their availability for new assignments.  As discussed below, our decision is not dependent on these determinations and, thus, any disputed facts surrounding them are inconsequential.

¶ 4 In late 1997, SOS also employed Lowrey as a temporary day laborer. Lowrey's final day of employment was December 6, 1997, when he performed an assignment for Scott Cameron, an SOS client. Like Gray, after completing this assignment, Lowrey made no contact with SOS to report his availability for future assignments, received no further assignments, and subsequently moved to Las Vegas.

¶ 5 Claimants both filed for unemployment compensation, which the Department of Workforce Services granted. On SOS's appeal of the Department's initial decision, the ALJ found that, although SOS expected day laborers to report their availability, neither Gray nor Lowrey made such contact. Nonetheless, the ALJ determined that the employment ended when the claimants completed their respective work assignments and that their separations from employment were due to a reduction in force, making SOS liable for its share of benefit costs.

¶ 6 SOS appealed the ALJ's rulings to the Workforce Appeals Board, arguing that claimants agreed to report their availability and that their failure to do so constituted a voluntary resignation from SOS. SOS relied on a clause in claimants' employment applications that provides: "I agree to report my availability weekly, or daily if assigned to jobs on a daily basis. Failure to adhere to this policy could constitute a voluntary resignation from SOS on my part." The Board found that this provision was in claimants' signed employment applications. Nonetheless, the Board agreed with the ALJ, adopting his findings and conclusions, and held that claimants' employment ended when their respective work assignments ended and that their "separation" was due to a reduction in force. The Board concluded that the avail-

ability of additional assignments was irrelevant because SOS had not actually offered these assignments to claimants and that, even if SOS had so offered, such assignments would constitute "new work." [2]

¶ 7 One member of the Workforce Appeals Board dissented, agreeing with SOS that claimants voluntarily quit their employment when they failed to report their availability or otherwise request reassignment. The dissenter concluded that claimants were not entitled to benefits absent a showing they quit for good cause or that a denial of benefits would be "contrary to equity and good [conscience]."

## ISSUE AND STANDARD OF REVIEW

¶ 8 SOS disputes the Board's conclusion that claimants were discharged pursuant to a reduction in force, arguing claimants voluntarily quit their employment by failing to report their availability for future assignments and moving out of state.[3] Especially because the parties do not dispute the underlying material facts, the Board's decision "calls for the application of statutes and administrative rules to a specific factual situation." *Professional Staff Management, Inc. v. Department of Employment Sec.*, 953 P.2d 76, 79 (Utah Ct.App.1998). The degree of deference we accord an agency's application of law to fact is ordinarily determined by a "sliding scale," [4] *Sierra Club v. Utah Solid & Hazardous Waste Control Bd.*, 964 P.2d 335, 341 (Utah Ct.App.1998), which hinges on policy concerns, the agency's expertise, and whether the issue is fact-driven or susceptible to uniform legal rules. *See id.; Drake v. Industrial Comm'n*, 939 P.2d 177, 181 n. 6, 182 (Utah 1997). Here, because "proper ap-

---

2. Depending on its nature and pay, "new work" can sometimes be declined without jeopardizing eligibility for unemployment benefits. *See* Utah Code Admin. P. R994–405–311 (Supp.1997). The Board did not explain how the hypothesized assignments would necessarily qualify as new work of a sort claimants would be free to reject.

3. SOS also argues the Board applied an incorrect definition of "new work" in evaluating claimants' potential future assignments with SOS. Because we conclude that claimants voluntarily quit their employment with SOS, the

existence and nature of possible future assignments is irrelevant, and we therefore do not reach this issue.

4. A specific statutory provision may require a different approach. For example, in workers' compensation cases, application of law to fact is reviewed for reasonableness. *See, e.g., Osman Home Improvement v. Industrial Comm'n*, 958 P.2d 240, 242–43 & n. 4 (Utah Ct.App.1998); *Caporoz v. Labor Comm'n*, 945 P.2d 141, 143 (Utah Ct.App.1997).

plication of the Employment Security Act and the relevant rules 'requires little highly specialized or technical knowledge that would be uniquely within the [Board's] expertise' ..., this court will review the agency's decision 'with only moderate deference.'" *Professional Staff Management*, 953 P.2d at 79–80 (quoting *Allen v. Department of Employment Sec.*, 781 P.2d 888, 890 n. 4 (Utah Ct.App.1989)).

## ANALYSIS

¶ 9  "[A] claimant is ineligible for [unemployment] benefits if 'the claimant left work voluntarily without good cause.'" *Professional Staff Management*, 953 P.2d at 77 (quoting Utah Code Ann. § 35A-4-405(1)(a) (1997)).

> Voluntarily leaving work means that the employee severed the employment relationship as contrasted to a separation initiated by the employer. This is true regardless of how compelling the claimant's reasons were for making the decision to leave the work. Voluntary leaving will include not only leaving existing work, but also the failure to return to work after a lay-off, suspension, or period of absence. Voluntary leaving also includes failure to renew a contract as in the case of a school teacher or athlete.

Utah Code Admin. P. R994–405–101 (Supp. 1997) (emphasis added).

■ ¶ 10  The undisputed facts show that claimants, not SOS, severed the employment relationship. To continue receiving assignments, claimants needed only to report that they had completed their current assignments and were available for a new placement.[5] Because claimants had control over whether their employment would continue and exercised that control in deciding not to report their availability, the Board and the ALJ erred in concluding the separation was a reduction in force. *See Allen*, 781 P.2d at 890–91 ("Since [claimants] thus assented of

their own volition to the cessation of their employment, that cessation was 'voluntary' within the meaning [of the statute]."). Because "[t]he test for voluntariness in leaving employment is not the willingness of *the employer* that the unemployment claimant continue working, but rather the willingness *of the claimant* to continue," whether SOS desired the employment relationship to end or continue is irrelevant. *Id.* at 891 (emphasis in original). *Accord Robinson v. Department of Employment Sec.*, 827 P.2d 250, 253 (Utah Ct.App.1992).

¶ 11  The Board's position seems to rest upon the fundamentally flawed premise that SOS's clients, rather than SOS itself, actually employed claimants. Thus, when the clients no longer needed a particular SOS "temp" for a particular job, the temp's employment ended due to a reduction in force. The Board's position becomes inconsistent, though, when it seeks to attribute that reduction in force to SOS. For purposes of employment security, SOS—not its clients—employed claimants, in an arrangement where claimants performed various temporary assignments of varying duration for various SOS clients at various locations. This employment relationship did not end simply because one assignment ended. Just as claimants' completion of earlier individual assignments did not terminate the relationship, completion of what they unilaterally decided would be their final assignment was likewise not a separation resulting from a reduction in force. Rather, the separation occurred when claimants made the decisions to no longer work for SOS and to quit calling in for new placements, thus closing the only practicable avenue for receiving new assignments. *See supra*, note 5. Awarding benefits in the face of this voluntary termination of employment runs counter to a fundamental purpose for which the Employment Security Act was enacted. *See* Utah Code Admin. P. R994–102–101 (Supp.1997) ("One of the purposes of the Employment Security

---

5.  The practical requirements of SOS's business require that its employees take the initiative in reporting their availability. It is much more feasible for each individual employee, of whom there are literally thousands, to call SOS when available and desiring work than for SOS to call every employee, each day or week, to ascertain whether they are available or not, and, if available, whether they desire a new assignment, wish a few days off, or want to end the employment relationship.

Act ... is to lighten the burdens of persons unemployed *through no fault of their own* ....") (emphasis added).

¶ 12   Notwithstanding the Board's and the ALJ's findings that claimants' employment contracts with SOS required claimants to report their availability, the Board now suggests that insufficient proof of the contracts below prevents this court from enforcing the terms of the contracts. Our decision, however, does not merely enforce the contracts. Rather, our decision is the rational result of the undisputed evidence showing the nature of SOS's and claimants' employment relationship. The contractual clause merely confirms the natural result of these relationships; it does not create the result. Each claimant's failure to report his availability for an additional assignment—the only means by which SOS would know the employee was again available for an assignment—shows the employee chose to sever the employment relationship. Any doubt in this regard is dispelled by claimants' departure from the state. Accordingly, our decision would be the same with or without an explicit contractual provision stating that SOS may treat an employee's failure to call in as a voluntary resignation.

¶ 13   Of course, this is not to say that no SOS employee who leaves employment by failing to report availability and moving away will ever be entitled to unemployment benefits. Such employees who can show they quit for good cause or that denial of benefits would be contrary to equity and good conscience may nonetheless receive benefits. *See* Utah Code Ann. § 35A-4-405(1)(a) & (b) (1997); *Robinson,* 827 P.2d at 253-54; *Allen,* 781 P.2d at 891. However, claimants did not pursue such a theory, nor did they present any evidence of this sort to the ALJ or the Board.[6] This is also not a case in which claimants reported their availability to SOS but received either no new assignments or only unsatisfactory assignments for a different type of work or at a lower pay rate.

While the former might properly be characterized as a layoff due to a reduction in force, and the latter might constitute good cause to quit, neither scenario is suggested by the facts in this case. Accordingly, contrary to the Board's contention, our decision does not place a large number of employees relegated to the rather marginal employment offered by a temporary staffing service in danger of falling through the cracks of the Employment Security Act. On the contrary, under our decision, only those employees of temporary staffing companies who cannot be bothered to pick up the phone and check in with their employer for their next assignment will run any risk of being found to have quit voluntarily.

## CONCLUSION

¶ 14   Because the undisputed facts clearly show that claimants had control over whether their employment with SOS continued, and that they, rather than SOS, severed their employment relationships of their own volition, the Board erred in concluding that the termination of claimants' employment resulted from a reduction in force. Consequently, we set aside the Board's decisions and remand the matter for further proceedings consistent with this opinion.

¶ 15   WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and NORMAN H. JACKSON, Judge.

---

6.  The rule then in effect provided as follows:
    Since the claimant is the moving party in a voluntary separation, he is the best source of information with regard to the reasons for the quit. The claimant has the burden of proof and must show that he had "good cause" for

quitting or that he meets the requirements for allowance under the equity and good conscience provision before benefits can be allowed.
Utah Code Admin. P. R994-405-105 (Supp. 1997).