2007 UT App 9

**ARROW LEGAL SOLUTIONS GROUP, P.C., Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES, Workforce Appeals Board; and Sheryl Angle, Respondents.**

**No. 20060102–CA.**

Court of Appeals of Utah.

Jan. 11, 2007.

---

**49.** *Id.* r. 137–1–11.

Kirsten K. Sparks, Arrow Legal Solutions, Midvale, for Petitioner.

Geoffrey Landward, Salt Lake City, for Respondent Workforce Appeals Board of the Utah Department of Workforce Services.

Before Judges BILLINGS, McHUGH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Petitioner Arrow Legal Solutions Group, P.C. (Arrow) seeks judicial review of a decision by respondent Workforce Appeals Board of the Utah Department of Workforce Services (the Board) allowing respondent Sheryl Angle to collect unemployment insurance benefits under the Utah Employment Security Act (the Act). *See* Utah Code Ann. §§ 35A–4–101 to –508 (2005 and Supp.2006). Arrow argues that the Board abused its discretion in determining that Angle's separation from Arrow constituted a discharge rather than a voluntary quit without good cause. We reverse and remand for further proceedings.

## BACKGROUND

¶ 2 Angle worked for Arrow from August 2000 until June 2005. At the time her employment ended, Angle was working as an office manager. During the last three years of her employment with Arrow, Angle was involved in a paternity suit with the brother of Arrow's owner. Tension between Angle and Arrow's owner increased as the paternity suit progressed, and ultimately, on June 20, 2005, the owner met with Angle and her attorney and informed Angle that he no longer felt comfortable with her continuing to work at Arrow.

¶ 3 At this time, the owner told Angle that she had two options: (1) she could quit immediately and receive two months severance pay, or (2) she could continue working while she looked for a new job. The owner did not provide a definitive date by which Angle would need to find new employment, although he later admitted that he gave Angle the severance option as an incentive for her to find employment elsewhere.[1] The following day, June 21, Angle went to work and learned that Arrow had given her a new work schedule and reduced her prior duties, although it had not reduced her hours or rate of compensation. Angle informed Arrow she was taking the severance pay option, making June 21, 2005, her last day of work.

¶ 4 Following her separation from Arrow, Angle applied for unemployment benefits. The Department of Workforce Services (DWS) granted benefits based on its determination that Angle voluntarily quit her employment with Arrow for good cause. Arrow appealed this decision to an administrative law judge (ALJ), who affirmed DWS's decision to allow benefits on the grounds that Arrow discharged Angle without just cause.[2] Specifically, the ALJ found that Arrow constituted "the moving party in the job separation when it gave [Angle] the option to leave and accept a severance package or continue working while she found new employment." The ALJ further explained that "[h]ad [Arrow] not presented the choices to [Angle], [she] could have continued working for [Arrow]." Arrow appealed the ALJ's decision to the Board.

---

1. The owner also admitted that, throughout Angle's employment, Arrow had not issued any written warnings to Angle regarding her job performance, had been pleased with her work, and "did not have just cause to terminate [her]."

2. The ALJ pointed out, however, that even if it were to adjudicate the case as a voluntary quit, it would still find Angle eligible for benefits.

¶ 5 The Board upheld the ALJ's decision, concluding that Angle's separation was a discharge rather than a voluntary quit. Specifically, the Board determined that "Arrow" "was clearly the moving party by informing [Angle] that she could quit immediately and receive a severance payment or quit after she found new employment" and that "[i]n essence, [Arrow] terminated [Angle's] employment but left it up to [Angle] to decide when that termination would take effect." Further, the Board explained that "[t]here was no evidence in the hearing that [Angle] had any intentions of quitting her job prior to [Arrow's] proposal." Based on its determination that Angle's separation did not constitute a voluntary quit, the Board affirmed the ALJ's award of unemployment benefits. Arrow now seeks review in this court.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 6 Arrow does not dispute the Board's factual findings. Rather, Arrow challenges the Board's application of the law to the relevant facts in determining that Angle's separation from Arrow constituted a discharge rather than a voluntary quit without good cause. This court has previously determined that the Act grants the Board the "discretion to determine issues involving voluntariness." *Robinson v. Department of Employment Sec.*, 827 P.2d 250, 252 (Utah Ct.App.1992); *see also* Utah Code Ann. § 35A–4–405(1) (2005). Accordingly, we "will not overturn [the Board's] decisions regarding voluntariness ... unless we determine [that the Board] has abused that discretion." *Robinson*, 827 P.2d at 252. Under this standard, we grant the Board "moderate deference" and "will uphold [the Board's] decision so long as it is within the realm of reasonableness and rationality." *Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 16, 29 P.3d 7 (alteration in original) (quotations and citations omitted).

## ANALYSIS

¶ 7 Arrow argues that the Board abused its discretion in determining that, under the Act and relevant agency rules, Angle's separation from Arrow constituted a discharge. Arrow claims that Angle voluntarily quit her employment without good cause and thus is ineligible for unemployment benefits. We agree that the Board abused its discretion in finding that Arrow discharged Angle, but remand for further findings on whether Angle had good cause to quit.

¶ 8 Under the Act, an individual is ineligible for unemployment benefits "[f]or the week in which the claimant left work voluntarily without good cause." Utah Code Ann. § 35A–4–405(1)(a). Utah Administrative Code (UAC) rule 994–405–101(1), promulgated in accordance with the Act, provides that "[a] separation is considered voluntary if the claimant was the moving party in ending the employment relationship." Utah Admin. Code R994–405–101(1). By contrast, rule 994–405–201 states that "[a] separation is a discharge if the employer was the moving party in determining the date the employment ended." *Id.* R994–405–201.

■ ¶ 9 Applying these rules, the Board concluded that Angle's separation constituted a discharge and not a voluntary separation. Specifically, the Board concluded that because Angle had no prior intentions of quitting her job, Arrow "was clearly the moving party by informing [Angle] that she could quit immediately and receive a severance payment or quit after she found new employment ... [and that i]n essence, [Arrow] terminated [Angle's] employment but left it up to [Angle] to decide when that termination would take effect." We disagree with the Board's determination and conclude that it abused its discretion in deciding that Angle's separation constituted a discharge rather than a quit.

¶ 10 It is clear that under the plain language of rule 994–405–201's discharge definition, Arrow was not "the moving party in determining *the date the employment ended.*" *Id.* (emphasis added); *see also Burns v. Boyden*, 2006 UT 14, ¶ 19, 133 P.3d 370 ("We interpret ... administrative rules[ ] according to their plain language."). Because Arrow gave Angle the option to remain at her job indefinitely until she found new employment, Angle's decision to leave immediately and make June 21, 2005, her final day of work made her the ultimate moving party in

determining the date her employment ended.[3]

¶ 11 In making their discharge determinations, both the Board and the ALJ focused solely on the fact that Arrow was the first party to broach the subject of Angle's potential separation, and ignored rule 994–405–201's express requirement that the employer must be the moving party in determining the *date* that the actual separation occurs. *See* Utah Admin. Code R994–405–201. In its arguments on judicial review, the Board again overlooks the rule's plain language and instead relies on a previous decision of this court holding that "[a] discharge occurs where an employee's choice to quit is compelled by the employer." *Schaeffer Indus., Inc. v. Department of Workforce Servs.*, 1998 WL 1758348, *2, 1998 Utah App. LEXIS 192, No. 971695–CA, *4–5 (Utah Ct.App. Nov. 13, 1998) (mem.). We note, however, that shortly after this court's decision in *Schaeffer,* DWS substantially amended rule 994–405–201 to include the present definition of discharge.[4] *See* Discharge—General Definition, 99 Utah State Bulletin 2, 72 (Dec. 16, 1998) (codified as amended at Utah Admin. Code R994–405–201 (2000)).

¶ 12 We agree with the Board that Arrow made the initial move to terminate the relationship. However, we further conclude that Angle's decision to leave her employment on June 21, rather than remain until she found new work, intervened in that initial move to become the proximate cause in ending the employment relationship. To hold otherwise and to uphold the Board's application of rule 994–405–101(1) would render the rule, as applied, inharmonious with rule 994–405–201 because Angle's separation would constitute neither a discharge nor a voluntary quit. *See* Utah Admin. Code R994–405–101(1), –

201; *cf. West Jordan v. Morrison,* 656 P.2d 445, 446–47 (Utah 1982) (applying similar prior versions of the Act and UAC rules and holding that an employee was involuntarily discharged and eligible for benefits when his employer terminated him immediately upon receipt of his two week resignation notice).

¶ 13 Additionally, the circumstances of Angle's termination appear to fall within the purview of UAC rule 994–405–106(5), governing the status of workers who terminate their employment in response to "rumors or other information suggesting that [they are] to be discharged." Utah Admin. Code R994–405–106(5). Under that rule, workers who receive information suggesting that they are to be terminated must

> confirm, prior to leaving, that the employer intended to end the employment relationship. The claimant also has a responsibility to continue working until the date of an announced discharge. If the claimant failed to do so and if the employer did not intend to discharge the claimant, the separation is a quit.

*Id.* Here, Arrow's discussion with Angle could reasonably be interpreted as suggesting that Arrow intended to discharge Angle at some point. As this information appears to have been the motivating factor in Angle's decision to leave Arrow's employ, Angle had the responsibility to confirm an actual intended discharge date and to continue working through that date. Because Angle did neither, her separation must be deemed a quit under rule 994–405–106(5). *See Robinson v. Department of Employment Sec.,* 827 P.2d 250 (Utah Ct.App.1992) (applying similar prior version of rule 994–405–106(5) and holding that an employee's decision to retire with benefits in the face of threatened involuntary layoffs was a quit).[5]

---

3. We note that there are no previous Utah cases applying UAC rule 994–405–201's present definition of discharge.

4. UAC rule 994–405–201's prior definition of discharge defined just cause, explained when it was not established, and provided that for there to be just cause "there must be some fault on the part of the employee involved." Utah Admin. Code R994–405–201 (1997).

5. We recognize that formal layoffs or reductions in force constitute a somewhat specialized area

of labor law that can sometimes be subject to its own rules. *See, e.g.,* Utah Admin. Code R994–405–106(2)(a) ("If an individual leaves work prior to the date of an impending reduction in force, the separation is voluntary. Notice of an impending layoff does not establish good cause for leaving work."). Although the facts of *Robinson v. Department of Employment Security,* 827 P.2d 250 (Utah Ct.App.1992), involve the threat of layoffs, rule 994–405–106(5) is not limited to the layoff context. We see no reason why *Robinson's* analysis of that rule should not apply here,

¶ 14 Having determined that Angle's separation from Arrow was voluntary, we must next consider whether that voluntary separation was without good cause. *See* Utah Code Ann. § 35A–4–405(1)(a) (explaining that an individual is ineligible for unemployment benefits "[f]or the week in which the claimant left work *voluntarily without good cause* " (emphasis added)). Angle alleges that she left on June 21, 2005, because she arrived at work to find that her duties and her work schedule had been substantially altered and that she faced a hostile work environment due to Arrow's indications that she was no longer welcome. Arrow, however, denies these allegations and disputes the timing in which the alleged incidents occurred relative to Angle's separation.

¶ 15 Because "[i]t is the province of the Board, not appellate courts, to resolve conflicting evidence," *Albertsons, Inc. v. Department of Employment Sec.*, 854 P.2d 570, 575 (Utah Ct.App.1993), and because the Board made no findings as to good cause, the appropriate procedural step is to remand for the Board to determine whether Angle's voluntary quit was without good cause. *See Tasters Ltd. v. Department of Employment Sec.*, 819 P.2d 361, 368 (Utah Ct.App.1991) (remanding to Board of Review to make appropriate factual findings); *see also Adams v. Board of Review of Indus. Comm'n*, 821 P.2d 1, 4 ("An administrative agency must make findings of fact and conclusions of law that are adequately detailed so as to permit meaningful appellate review."). Indeed, remand seems particularly appropriate given that the ALJ and the Board's focus on discharge circumvented the good cause determination and possibly limited the parties' introduction and development of evidence as to this issue.

## CONCLUSION

¶ 16 We reverse the Board's determination that Angle's separation from Arrow constituted a discharge. UAC rule 994–405–201's definition of discharge plainly states that a discharge occurs if the employer was the

and specifically in regard to the obligation of employees to work so long as there is work

moving party in determining the *date* the employment ended. Given this language, we conclude that the Board abused its discretion in making its discharge determination because Angle, not Arrow, determined the June 21, 2005, date of separation. We also note that, under rule 994–405–106(5), Angle could not justifiably act on Arrow's perceived threat of termination without determining a discharge date and working until that date.

¶ 17 Because we conclude that Angle's separation constituted a voluntary quit and not a discharge, we remand for the Board to determine whether Angle's voluntary separation was with good cause. The Board's decision on remand will determine Angle's eligibility for unemployment benefits.

¶ 18 I CONCUR: CAROLYN B. McHUGH, Judge.

¶ 19 I CONCUR IN THE RESULT: JUDITH M. BILLINGS, Judge.